Cite as 2014 Ark. App. 91

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-13-859

|  |  |
|---|---|
| | **Opinion Delivered** February 12, 2014 |
| CLAUDINE LOCKRIDGE<br>APPELLANT | APPEAL FROM THE CRAIGHEAD<br>COUNTY CIRCUIT COURT<br>[NO. JV-2012-107] |
| V. | |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and S.C., MINOR<br>CHILD | HONORABLE BARBARA HALSEY,<br>JUDGE |
| APPELLEES | AFFIRMED; MOTION TO<br>WITHDRAW GRANTED |

## BRANDON J. HARRISON, Judge

Claudine Lockridge appeals the termination of her parental rights as to her daughter, S.C., born 9/16/2011.[1]  Lockridge's counsel has filed a no-merit brief pursuant to *Linker-Flores v. Ark. Dep't of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup. Ct. R. 6-9(i) (2013), asserting that there are no issues of arguable merit to support an appeal and requesting to be allowed to withdraw as counsel.  Lockridge was notified of her right to file pro se points for reversal pursuant to Ark. Sup. Ct. R. 6-9(i)(3), but she has not done so. We grant counsel's motion to withdraw and affirm the order terminating Lockridge's parental rights.

S.C. was born on 16 September 2011.  On 24 October 2011, a protective-services case

---

[1]The putative father's parental rights were also terminated, but he is not a party in this appeal.

SLIP OPINION

was opened on Lockridge due to medical neglect of S.C., and several home visits were conducted over the next few months to check on the baby. On 12 January 2012, Corina Ramirez, the family social worker, took Lockridge and the baby to the children's clinic because the baby had a runny nose, a fever, and was very congested. Lockridge was also provided transportation to a follow-up doctor's visit on 19 January 2012, and she was told to call the Department if she needed a ride to medical appointments. Lockridge was a "no-show" for two appointments in March and then lied to the Department about making an appointment with the children's clinic. The Department then took a seventy-two-hour hold on the baby and filed a petition for emergency custody and dependency-neglect on 6 April 2012. The petition was granted, and the baby was adjudicated dependent/neglected in an order filed 31 May 2012. The goal of the case was originally reunification, but that goal was changed to adoption in a permanency-planning order entered 28 March 2013, after Lockridge repeatedly failed to substantially comply with the case plan.

A petition to terminate Lockridge's parental rights was filed on 3 May 2013, and at a hearing on the matter, the court heard testimony from Terri Blanchard, the foster-care supervisor affiliated with S.C.'s case. Blanchard testified that after the baby was taken into the Department's custody, the Department did initially have some contact with Lockridge, but from May 2012 until March 2013, there was virtually no contact from the mother. Blanchard opined that Lockridge had failed to maintain meaningful contact with her baby and had abandoned the baby. Blanchard explained that as of 1 March 2013, Lockridge had obtained her own apartment, was not employed, was still attending high school, and was pregnant.

Lockridge had also been arrested for shoplifting. Blanchard acknowledged that Lockridge had participated in some parenting classes but that she had not done "even the most basic of keeping in contact. I believe she's only visited the child four times during the case." Blanchard stated that she "really question[ed] her (Lockridge's) judgment" and that she would be very concerned about the risk of neglect if the baby was returned to Lockridge. Blanchard testified that the baby had been in her current placement for over a year and that she was very adoptable.

After hearing arguments from counsel, the court determined that it was in S.C.'s best interest that Lockridge's parental rights be terminated and found that the Department had proven four statutory grounds for termination: (1) S.C. had continued out of Lockridge's custody for twelve months, and despite meaningful effort by the Department to rehabilitate Lockridge and to correct the conditions which caused removal, those conditions had not been remedied; (2) Lockridge had willfully failed to provide significant material support or to maintain meaningful contact; (3) Lockridge had abandoned S.C.; and (4) subsequent to the filing of the petition for dependency-neglect, other facts or issues arose that demonstrate that the return of S.C. to Lockridge is contrary to S.C.'s health, safety, or welfare. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i), (ii), (iv), and (vii) (Supp. 2011). An order terminating Lockridge's parental rights was entered on 1 July 2013, and this no-merit appeal followed.

A circuit court's order that terminates parental rights must be based on findings proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2011); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing

evidence is proof that will produce, in the fact-finder, a firm conviction on the allegation sought to be established. *Dinkins, supra*. On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit judge to assess the witnesses' credibility. *Id*.

In her no-merit brief, Lockridge's counsel contends that clear and convincing evidence supports both the finding of grounds for termination and the finding that termination would be in the child's best interest. With regard to best interest, counsel notes the testimony that S.C. was adoptable and that she was placed in a potential adoptive home. Counsel also cites Lockridge's failure to obtain stable income and housing, lack of visitation or parental bond, and failure to comply with the court's orders as evidence of potential harm to S.C. Counsel concludes that there was abundant evidence of adoptability and potential harm and thus no meritorious argument that the termination was not in S.C.'s best interest.

With regard to the grounds for termination, counsel explains that only one ground is required to be proven and argues that, in this case, there was clear and convincing evidence of all the grounds alleged. However, counsel asserts that two grounds in particular, subsection (ii) (failure to maintain meaningful contact) and (vii) (other factors or issues), were clearly established. Counsel notes that Lockridge visited the baby only four times over the entire length of the case; that Lockridge demonstrated no ability to provide for the baby's care; and

SLIP OPINION

that Lockridge did not stay in contact with the Department. Counsel also states that Lockridge did not complete parenting classes as ordered and failed to maintain stable housing or employment. Counsel concludes that any argument that the statutory grounds for termination were not established by clear and convincing evidence would be wholly frivolous.

We agree that the circuit court had ample evidence upon which to find that it was in S.C's best interest for Lockridge's parental rights to be terminated and that statutory grounds for termination existed. Lockridge unquestionably failed to comply with the case plan, failed to maintain any meaningful contact with her child, and basically demonstrated a complete lack of interest in the child. Thus, we grant counsel's motion to withdraw and affirm the termination of Lockridge's parental rights.

Affirmed; motion to withdraw granted.

WYNNE and GLOVER, JJ., agree.

*Deborah R. Sallings*, Arkansas Public Defender Commission, for appellant.

No response.