SLIP OPINION



Cite as 2014 Ark. App. 288

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-47

| | |
|---|---|
| LANCE JACKSON | **Opinion Delivered** May 7, 2014 |
| APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23JV-12-567] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN | HONORABLE DAVID M. CLARK, JUDGE |
| APPELLEES | AFFIRMED; MOTION GRANTED |

### DAVID M. GLOVER, Judge

Lance Jackson's parental rights to his sons, I.J., born September 1, 2009, and L.J., born September 29, 2011, were terminated by an order entered October 15, 2013.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), Jackson's attorney has filed a no-merit brief asserting that there are no issues that would support a meritorious appeal and a motion requesting to be relieved as counsel. We affirm the termination of parental rights and grant the motion to withdraw.

This case began on December 21, 2012, when the Arkansas Department of Human Services (DHS) filed a petition for emergency custody of J.M., I.J., L.J., and Z.J. against

---

[1]On July 11, 2013, the boys' mother, Marsha Oliver, executed a "Relinquishment of Parental Rights" to not only I.J. and L.J., but also to another son and daughter, J.M. and Z.J., who are not Jackson's biological children.

Jackson and Marsha Oliver.[2]  A report was made to the Child Abuse Hotline on December 20, 2012, that J.M., Oliver's four-year-old son, had been burned over forty percent of his body by Oliver; medical attention was not sought for over three hours.  It was determined that the second- and third-degree burns could not have occurred in the manner Oliver reported.  While in the hospital, it was discovered upon examination that J.M. had many more injuries, including human bite marks; cigarette burns; extensive bruising; multiple scars on his chest, back, legs, and abdomen; and a hematoma on the right side of his face.  DHS took all of the children into custody because of J.M.'s injuries and because the children would be at risk for substantial harm if returned to the home.  An ex parte order for emergency custody was issued on December 21, 2012.  The children were adjudicated dependent-neglected in an order entered on March 7, 2013.

DHS filed a motion to terminate reunification services in February 2013 based on the fact that J.M. had been subjected to aggravated circumstances and that there was little likelihood that services would result in successful reunification; this motion was granted on May 31, 2013.  In a permanency-planning order filed in July 2013, the trial court found that it was in the children's best interest to remain in DHS custody; that the goal of reunification was not appropriate; and that the concurrent goal of adoption was appropriate and would be the primary goal.  DHS filed a petition to terminate parental rights on August 12, 2013.  After

[2]Jerame McNeal was named as the legal/putative father of J.M.  While Jackson was initially believed to be the father of I.J., L.J., and Z.J., it was later determined that Jackson was not Z.J.'s biological father.

SLIP OPINION

a hearing on the petition to terminate parental rights, the trial court did in fact terminate Jackson's parental rights to his two sons.

*Sufficiency of the Evidence*

We review termination-of-parental-rights cases de novo. *Spangler v. Arkansas Dep't of Human Servs.*, 2012 Ark. App. 404. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Watson v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 28. DHS must prove by clear and convincing evidence—that degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established—that it is in the children's best interest to terminate parental rights, as well as the existence of at least one statutory ground for termination. *Spangler, supra.* In determining the best interest of the juveniles, a trial court must take into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Myers v. Ark. Dep't of Human Servs.*, 2011 Ark. 182, 380 S.W.3d 906. When the burden of proof is clear and convincing evidence, the inquiry on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Watson, supra.* However, we do give a high degree of deference to the trial court, as it is in a far superior position to observe the parties

before it and to judge the credibility of the witnesses. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

In the present case, the trial court found three bases for the termination of Jackson's parental rights—Arkansas Code Annotated section 9-27-341(b)(3)(B)(vi) (Repl. 2009) (The court has found the juvenile or a sibling dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents or step-parent or step-parents.); Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii) (Other factors arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that the return of the juvenile to the home is contrary to the juvenile's health, safety, or welfare, and that, despite the offer of appropriate services, the parent had manifested the incapacity or indifference to rehabilitate the circumstances preventing the return of the juvenile to the home.); and Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*A*) (The parent is found by a court of competent jurisdiction to have subjected any juvenile to aggravated circumstances.).

There was no error in the trial court's finding that Jackson's parental rights should be terminated. There was testimony that the boys were adoptable, and there was also evidence of potential harm if the boys were returned to Jackson's custody. Marsha Oliver voluntarily relinquished her parental rights to all four of her children, but the trial court nevertheless found that Jackson continued to have a relationship with Oliver during these proceedings. Although Jackson denied this relationship, the trial court did not believe him. Furthermore, due to the injuries inflicted on J.M., there was a no-contact order between Oliver and the

children, but Jackson still allowed Oliver to talk to the children on the phone. Although Jackson testified that at the time he allowed Oliver to talk to the children he did not know that there was a no-contact order, the trial court did not believe him. The trial court specifically found that DHS had proven by clear and convincing evidence that J.M. had suffered life-threatening abuse while living with Jackson, that Jackson was aware of the abuse, that Jackson took no action to protect J.M. from the abuse, and that Jackson still did not believe Oliver had abused J.M. The trial court did not find Jackson's testimony that he was not present when the abuse occurred to be credible. There was testimony at the termination hearing that, when asked about J.M.'s injuries, Jackson stated that J.M. was "just bad."

Jackson's continued contact with Oliver, his allowance of phone contact between Oliver and the children despite a no-contact order, his denial of knowledge of the severity of J.M.'s injuries, his rationale that J.M. was "just bad," and the fact that the trial court found that Jackson knew of the abuse suffered by J.M. yet did not do anything to prevent it supports all three grounds for termination. There was no error in terminating Jackson's parental rights.

*Other Adverse Rulings*

Other than the sufficiency of the evidence to support termination of Jackson's parental rights, there were two rulings made during the termination hearing that were adverse to Jackson. Neither of these rulings constitutes reversible error.

The first adverse ruling occurred during the direct examination of Magean Brents, the DHS family-services worker. Jackson's counsel objected when the DHS attorney asked Brents which of J.M.'s injuries were obvious to the naked eye. Jackson's attorney objected

and asked the trial court if it was adjudicating the matter, as there was no mention in the adjudication order that Jackson had caused the harm to J.M. Counsel for DHS explained that the question was asked to show that Jackson was in the home at the time of J.M.'s injuries and took no action to prevent any further injuries to J.M. The trial court overruled Jackson's objection. This objection was really just a comment—it failed to apprise the trial court of any specific legal error in eliciting this information from Brents. To preserve an issue for appeal, the objection must be specific enough to inform the trial court of the particular error about which appellant complains. *Blanchard v. State*, 2009 Ark. 335, 321 S.W.3d 250.

The other ruling adverse to Jackson also occurred during Brents's testimony on direct examination while she was testifying about an altercation between Jackson and Oliver and began to discuss police reports and medical documents. Jackson's counsel objected to Brents testifying about any police reports and medical documents on the basis of hearsay. The trial court never made a ruling on this objection; instead, the trial court simply directed counsel for DHS to "move on." The failure to raise issues or to obtain rulings at the trial-court level is fatal to this court's consideration of the issue on appeal. *Johnson v. Arkansas Dep't of Human Servs.*, 2012 Ark. App. 537.

After carefully examining the record and the brief presented to us, we hold that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and conclude that the appeal is wholly without merit. Accordingly, counsel's motion to withdraw is granted, and the order terminating Jackson's parental rights is affirmed.



Affirmed; motion granted.

GLADWIN, C.J., and HIXSON, J., agree.

*Didi H. Sallings*, Arkansas Public Defender Commission, for appellant.

No response.