Mary LINKER-FLORES, Anastacio Flores  *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES
and Adrianna Flores and Aranthza Flores, minor children

03-1099                                           194 S.W.3d 739

Supreme Court of Arkansas
Opinion delivered October 7, 2004

*Cuffman and Phillips*, by: *James H. Phillips*, for appellant Anastacio Flores.

*Anne Orsi Smith, P.A.*, by: *Anne Orsi Smith*, for appellant Mary Linker-Flores.

*Gray Allen Turner*, DHS Office of Chief Counsel, for appellee.

*Merry Alice Hesselbein*, Attorney *ad Litem*, for appellees Adrianna Flores and Aranthza Flores, minor children.

ANNABELLE CLINTON IMBER, Justice. This case arises out of an order entered by the trial court on March 3, 2003, that terminated all parental rights of Appellants Anastacio Flores and Mary Linker-Flores. Mr. Flores appeals, arguing the evidence against him was insufficient to support a termination of parental rights. Although Mrs. Flores timely filed notices of appeal,[1] her appointed counsel filed a motion in this court to be relieved as counsel on the grounds that she could find no meritorious issues for appeal. Because Mrs. Flores is entitled to representation on appeal under Ark. Code Ann. § 9-27-316(h)(1) (Supp. 2003), we denied counsel's motion to be relieved and ordered the parties to brief the issue of whether counsel representing a parent in a termination proceeding should be required to file a no-merit brief comparable to that required under *Anders v. California*, 386 U.S. 738 (1967), where there appears to be no meritorious grounds for appeal. *Linker-Flores v. Arkansas Dep't of Human Services*,356 Ark. 369, 149 S.W.3d 884, 2004 WL 396342 (March 4, 2004)(per curiam). This is an issue of first impression in Arkansas. Thus, our jurisdiction is proper pursuant to Ark. S.Ct. R. 1-2(b)(1).

---

[1] Mrs. Linker-Flores filed notice of appeal through her attorney on March 20, 2003 and *pro se* on April 2, 2003. Both notices were timely.

## 1. Appellant Anastacio Flores — Sufficiency of the Evidence

Mr. Flores is purportedly married to Mary Linker-Flores,[2] who has three children, Kevin, Chad, and Lauren Linker, by another marriage. Additionally, Mr. and Mrs. Flores have two children, Aranthza and Adrianna Flores. This case began on July 27, 2001, when the Arkansas Department of Human Services (DHS) filed a petition for emergency custody of all five children. DHS had been investigating the Linker-Flores family since April 9, 2001, when the Department received an initial report of educational neglect. On May 10, 2001, the case was assigned to a caseworker and services such as home visits and a referral for housing were offered to the family. On July 25, 2001, DHS received a call from a detective with the Little Rock Police Department, stating that Kevin Linker had raped Chad and Lauren Linker. At this time, both parents were arrested on warrants. Kevin was arrested, and the assessor initiated a seventy-two-hour hold on the children because of the uncertainty of the sexual abuse allegations and the lack of a legal caretaker. The court entered an Order for emergency custody and set the matter for an emergency hearing on August 1, 2001.

At the August 1, 2001 hearing, the trial court found that probable cause existed and maintained the children in the custody of DHS. The court also ordered a home evaluation of the Linker-Flores home and supervised visitation for Mr. and Mrs. Flores at the DHS office.

On September 13, 2001, at the adjudication hearing, the court found the children were dependent/neglected and maintained them in DHS custody. The court also ordered both parents to attend and complete parenting classes. The court set March 11, 2001, for another review. Mr. Flores did not appear at the March review hearing.

On July 22, 2002, at the permanency planning hearing, the court ordered Mr. Flores to undergo a drug and alcohol assessment, and attend classes for drug and alcohol abuse and anger management. The court set January 8, 2003, as the date for the termination hearing.

At the termination hearing, numerous witnesses testified to various problems with Mr. Flores that made him an unsuitable parent. Dr. Janice Church, one of the therapists for Lauren Linker,

---

[2] Documentation of the marriage was requested but never provided.

testified that Mr. Flores's cooperation was minimal and it took him a long time to get into the program. Once he started the program, he would not voluntarily come to therapy but only attended because of the court order. Dr. Church testified that though Mr. and Mrs. Flores minimized the problems in their relationship and Mr. Flores's abuse of alcohol, the children consistently talked about it and there was no reason to doubt the children's truthfulness. Dr. Church further testified that Mr. Flores admitted to usually drinking twelve to twenty-four beers over a two-day period, but he did not see himself as having a problem with alcohol. After Mrs. Flores was incarcerated, Dr. Church had a few sessions with Mr. Flores, but then Mr. Flores failed to return for further therapy.

Jim Harper, the therapist who had worked with Chad Linker, testified that he was very concerned about Mr. Flores's problems with domestic abuse and alcoholism. Harper testified that at intake, Chad said he got along with Mr. Flores except on Fridays when Mr. Flores became drunk, beat his mother and tore her underwear.

Dr. Paul Deyoub, the clinical psychologist who performed psychological evaluations on Mr. and Mrs. Flores, testified that Mr. Flores "had some interest in getting his biological children, but had no interest in the family, and very little sympathy for the victims." Furthermore, Dr. Deyoub found Mr. Flores to be "resistant beyond the language barrier" and testified that, for Mr. Flores to be capable to take his children would require "that he have a stable situation and that he is providing an adequate home and he will participate in some type of counseling for himself regarding the substance abuse, regarding parenting issues and do better than he did with me in the evaluation when I saw him."

Anna Foster, the case worker, testified both parents completed parenting classes and have had random drug-screens, which have all been negative. She testified she was never able to do a home evaluation because the family didn't have a permanent home. She further testified that on one occasion at the end of November or early December 2002, Mr. Flores came to the DHS office for a visit, smelling very strongly of alcohol. She asked him about it and he originally denied it, but later changed his story to having had one beer due to his many problems. Ms. Foster also testified that Mr. Flores was currently living at 6200 Asher Avenue

in the Chateau Apartments with other Mexican males and that he had said he could not care for his two children without their mother.

Mary Linker-Flores testified that she and Mr. Flores had moved around a lot, living with friends and in some motels. She testified that currently she and Mr. Flores lived in the Chateau Apartments, where usually there were four or five men and an extra on some occasions. She admitted the current living arrangement was inappropriate because of the other men and the drinking there. She denied that Mr. Flores hit her, except for one time when he was drunk and she was pregnant. Mr. Flores did not testify. After hearing all the evidence, the court made the following finding:

> As to Anastachio Flores, father of Adrianna Flores (DOB: 9-8-00) and Aranthza Flores (DOB: 8-17-99), he has attended most of the hearings and visits and he has worked at a job most, if not all, of the time since this case was opened, but he has not had stable housing, despite steady income; it has never been determined if he is a legal resident; he has gone to some counseling sessions, but would not go unless mother went; he lives with five to six male Mexican immigrants in an apartment; he has never worked with the case worker to develop a plan to care for the children without help from the mother; he stated he would take the children to Mexico and have his wife there to care for them. There is evidence of substantial consumption of alcohol and he came to one visit at DHS after drinking beer. The court has accommodated him with interpreters at hearings and evaluations. Still there has been no evidence presented that he could parent these children. Thus, the Court finds that it is in the Flores children's best interest that the parental rights of Mr. Flores be and hereby are terminated.

> Throughout this case, the Court finds that the Department made reasonable efforts to offer services to the family. Further, the Court finds that the Department made meaningful efforts to offer services to the family. The mother and father have failed to take advantage of the services, rehabilitate their lives and remedy the situation which caused removal of the children from the home.

Mr. Flores appeals from this order, arguing the evidence was insufficient to support the termination of parental rights by the court. We find the evidence was sufficient and affirm the trial court.

Mr. Flores argues the trial judge was not presented with clear and convincing evidence of meaningful efforts as required pursu-

ant to Ark. Code. Ann. § 9-27-341 (Supp. 2003). Our law is well settled that when the burden of proving a disputed fact is by clear and convincing evidence, the inquiry on appeal is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Baker v. Arkansas Dep't of Human Services,* 340 Ark. 42, 8 S.W.3d 499 (2000). Clear and convincing evidence is defined as "that degree of proof which will produce in the factfinder a firm conviction as to the allegation sought to be established. In making such a determination, we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.*

In this case, the trial judge was presented with clear and convincing evidence of meaningful efforts by DHS. Over the course of the fifteen-month investigation, DHS offered numerous services, therapy options, and classes to Mr. Flores. Mr. Flores had counseling options by Dr. Church, parenting classes, anger management classes, drug and alcohol assessments, and a housing referral offer by DHS. While Mr. Flores did complete the parenting classes and attended some of the counseling sessions, he was a very reluctant participant throughout the entire ordeal. While his first scheduled counseling session was in February, he waited until May to attend a session, and that was only after Dr. Church refused to schedule another appointment until he came in. He was "not enthusiastic about being there but he was not completely unwilling to be there," and he repeatedly complained that it was "too inconvenient for him to be there because of his job situation, work hours, and transportation." Though he could have continued therapy after his wife was incarcerated, he stopped going to counseling sessions entirely after two more visits. During one session with Mr. Flores, Dr. Church suggested Mr. Flores needed to secure suitable housing to get the children back, which he still had not done at the time of the termination hearing. Dr. Church further testified that Mr. Flores's alcohol consumption was "a huge issue and something [the children] were very concerned about." Despite this concern, Dr. Church was unable to make much progress in this area because Mr. and Mrs. Flores minimized his problems with alcohol or anger management.

Mr. Flores argues the evidence that he did not meaningfully participate in the therapy is "beside the point." However, as he maintains that DHS did not provide him with services and that DHS should have considered him individually for placement of the

children, his lack of participation in the family therapy is precisely the point. DHS tried to establish a program of therapy for Mr. Flores to help him with his personal issues, as well as the broader family issues, but he found it "too inconvenient" to participate. He failed to show up for the first three sessions and stopped going entirely after his wife was incarcerated. Furthermore, we reject Mr. Flores's suggestion that some sense of family unity prohibited him from engaging in meaningful therapy without the presence of his wife. Mr. Flores is asking for custody of his two girls, yet he is unable to function in his role as a parent without his wife, who is in jail. Mr. Flores himself admitted to not being able to take care of the children without his wife, and threatened to take his children to Mexico, and have his wife there care for them. All the evidence presented at trial produced in the factfinder a firm conviction that DHS had made meaningful attempts to offer services to Mr. Flores and that he had failed to take advantage of them.

Mr. Flores's failure to secure stable and appropriate housing for the children also supports the termination of parental rights. At the time of the termination hearing, he was living in an apartment with five or six Mexican men, and, at times, living in a motel when the apartment became too crowded. This is an entirely inappropriate living environment for two girls, ages ten and two. Despite being forewarned that he needed to secure more stable housing by Dr. Church and the referral for housing offered by DHS, Mr. Flores failed to find suitable housing. He further rejected all attempts in therapy to deal with his potential alcohol and anger issues, despite the knowledge that his behavior often scared the children.

Termination of parental rights is an extreme remedy and is in derogation of the natural rights of the parents. *Baker v. Arkansas Dep't of Human Services, supra.* However, parental rights should not be allowed to continue to the detriment of the child's welfare and best interest. *Id.* Here, because the evidence shows that Mr. Flores failed to address his problems with alcohol and anger management, failed at any meaningful participation in therapy, and refused to establish a stable living environment for his children, we affirm the trial court's order terminating his parental rights.

### 2. Appellant Mary Linker-Flores — Appointed Counsel's Motion to be Relieved

In this case, Mrs. Flores filed a timely notice of appeal, and her appointed counsel, Anne Orsi Smith, petitioned this court to

be relieved as counsel, stating she could find no meritorious grounds for appeal. *Linker-Flores v. Arkansas Dep't of Human Services, supra.* We denied Smith's motion and ordered the parties to brief the issue of whether counsel representing an indigent parent in a termination proceeding should be required to file a no-merit brief, comparable to that required under *Anders v. California, supra,* where there appears to be no meritorious grounds for appeal. Based upon our review of Arkansas law and cases from other jurisdictions, we hold that the *Anders* procedure is a correct balancing of the rights of indigent parents and the obligations of their appointed attorneys, and we adopt this procedure for appeals involving indigent parents in termination cases.

At the outset, it must be noted that indigent parents have a right to counsel on appeal in Arkansas. Through Ark. Code Ann. § 9-27-316(h) (Supp. 2003), as well as relevant case law, Arkansas has recognized this right. This statute gives parents involved in proceedings to terminate parental rights "the right to be represented by counsel at all stages of the proceedings and the right to appointed counsel if indigent." *Id.* In *Gilliam v. State,* 305 Ark. 438, 808 S.W.2d 738 (1991), our court interpreted identical language from Ark. Code Ann. § 9-27-316 (Repl. 1991), and concluded that a juvenile delinquent had a right to counsel on appeal. Furthermore, we have allowed the payment of attorney's fees for an attorney who represented an indigent parent on appeal. *Baker v. Arkansas Dep't Of Human Services, supra.* Most notably, in *Linker-Flores v. Arkansas Dep't Of Human Services, supra.,* this court explicitly recognized an indigent parent's right to counsel on appeal.

Given that indigent parents are entitled to court-appointed counsel on appeal, we must determine the extent of counsel's obligations when counsel believes the appeal is frivolous. The Supreme Court addressed this concern in the context of criminal appeals in *Anders v. California, supra.* In *Anders,* the Court delineated the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after counsel has reviewed the record and conscientiously determined that it contains no meritorious issues for appeal. The Court was particularly concerned with possible discrimination against the indigent defendant, and the need for the defendant to have representation in the role of an advocate, rather than that of amicus curiae. To protect the indigent defendant's right to counsel on appeal, the court adopted the following procedure for counsel's withdrawal:

> [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds, it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Id.* at 744. We must now decide whether to apply this procedure to an indigent parent's appeal of an order terminating parental rights.

Courts throughout the country have examined this issue, and the majority of jurisdictions addressing the question have concluded that the *Anders* procedures are appropriate in appeals from orders terminating parental rights. *People ex rel. South Dakota Dep't of Social Services,* 678 N.W.2d 594 (S.D. 2004); *In the Interest of K.S.M.,* 61 S.W.3d 632 (Tex. Ct. App. 2001); *State ex rel. Children, Youth, and Families Dep't v. Alicia P.,* 127 N.M. 664, 986 P.2d 460 (Ct. App. 1999); *L.C. v. Utah,* 963 P.2d 761 (Utah Ct. App. 1998); *J.K. v. Lee County Dep't of Human Resources,* 668 So.2d 813 (Ala. Civ. App. 1995); *In re V.E. and J.E.,* 417 Pa. Super. 68, 611 A.2d 1267 (1992); *Morris v. Lucas Co. Children Services,* 49 Ohio App.3d 86, 550 N.E.2d 980 (1989); *Matter of Keller,* 138 Ill. App. 3d 746, 486 N.E.2d 291 (1985). In so concluding, some courts have looked at the similarities between the rights of indigent clients and duties of appointed counsel in both criminal and civil appeals. The Texas Court of Appeals in *In the Interest of K.S.M.,* 61 S.W.3d at 634, stated:

> Like indigent criminal appellants, indigent appellants challenging an order terminating their parental rights enjoy a right to counsel on appeal. . . . In addition, the difference in the nature of the case, i.e., civil rather than criminal, makes no difference in the duties court-appointed counsel owes his or her client. From counsel's perspective, counsel's duty to competently and diligently represent the client is exactly the same in a civil appeal from an order terminating parental rights as in an appeal from a criminal conviction.

Appellate courts in South Dakota and Utah have applied similar reasoning in adopting *Anders*-like procedures. *People ex rel. South Dakota Dep't of Social Services, supra; L.C. v. Utah, supra.*

Other courts have examined the additional protections and guidance the *Anders* procedures offer the indigent appellant and the court. The Court of Civil Appeals of Alabama has emphasized that the court-appointed appellate counsel should have "some means by which to effectively represent his client and yet be allowed to withdraw without having to file a frivolous appeal. . . ." *J.K. v. Lee County Dep't of Human Resources*, 668 So.2d at 815. The Alabama court went on to explain that there was no practical difference in making the attorney continue with the appeal[3], thus raising frivolous issues that the appellate court will have to review, and requiring an *Anders* brief raising possible issues but notifying the court that counsel believed the appeal was frivolous. Appellate courts in both Alabama and New Mexico have recognized that the arguments and legal authority cited in a no-merit brief would assist both the appellate court and the indigent parent. The appellate court can use the brief to conduct a more thorough and more informed review of the record, and the indigent parent can use the brief in pressing her contentions on appeal. *J.K. v. Lee County Dep't of Human Resources, supra; State ex rel. Children, Youth, and Families Dep't v. Alicia P., supra.* Essentially, because the indigent parent has access to the arguments and legal authority in the brief, she is in the same position as those able to afford private counsel. *Matter of Keller*, 138 Ill.App.3d at 747.

■ Some jurisdictions have declined to adopt the *Anders* procedures for appeals from orders terminating parental rights, arguing the additional time necessary to fulfill the *Anders* requirements could cause harm to the child at issue in the case. *N.S.H. v. Florida Dep't of Children and Family Services*, 843 So.2d 898 (Fla. 2003); *In re Harrison*, 136 N.C. App. 831, 526 S.E.2d 502 (2000); *Denise H. v. Arizona Dep't of Economic Security*, 193 Ariz. 257, 972 P.2d 241 (Ct. App. 1998); *In re Sade C.*, 13 Cal. 4th 952, 920 P.2d 716 (1996); *Ex parte Cauthen v. Almendarez*, 291 S.C. 465, 354 S.E.2d 381 (1987). While we do recognize the need to resolve

---

[3] Courts in Massachusetts and Washington have refused to allow appointed counsel to withdraw based on the ground that the appeal is frivolous or otherwise lacking in merit. *Care and Protection of Valerie*, 403 Mass. 317, 529 N.E.2d 146 (1988); *In re Welfare of Hall*, 99 Wash. 2d 842, 664 P.2d 1245 (1983).

termination issues "as rapidly as is consistent with fairness," *Lassiter v. Dep't of Social Services of Durham Co. North Carolina,* 452 U.S. 18, 32 (1981), we must balance this need with the substantial loss the parents will face if their child is taken away from them. The need for a prompt resolution of these matters has already been recognized by the adoption of Ark. R. App. P—Civ. 2(e) (2004), which accords priority to appeals involving termination of parental rights. Moreover, as the production of the record is often the most time-consuming part of the appeal process, the only way to reach a significantly faster resolution in termination-of-parental-rights appeals would be to allow the lawyer to withdraw before the preparation of the record. This is not an acceptable alternative, as neither the court *nor the lawyer* can review the record for potential meritorious points of appeal. Fairness requires that the indigent parent is entitled to a review of the record for any appealable issues, and we will not eliminate this step from the process. Because the record must be produced even in circumstances where the lawyer ultimately asks to withdraw, the only time saved by allowing such a withdrawal without the preparation of an *Anders* brief is simply the time it takes for the lawyer to prepare the brief, which is inherently limited by the briefing schedule. While the preparation of a brief does take time, the additional time involved is hardly sufficient to justify doing away with procedures to protect the parent's right to counsel on appeal.

██ Because we conclude that the benefits from the *Anders* protections to the indigent parent's right to counsel outweigh the additional time such procedures require, the *Anders* procedures shall apply in cases of indigent parent appeals from orders terminating parental rights. Thus, we hold that appointed counsel for an indigent parent on a first appeal from an order terminating parental rights may petition this court to withdraw as counsel if, after a conscientious review of the record, counsel can find no issue of arguable merit for appeal. Counsel's petition must be accompanied by a brief discussing any arguably meritorious issue for appeal. The indigent parent must be provided with a copy of the brief and notified of her right to file points for reversal within thirty days. If this court determines, after a full examination of the record, that the appeal is frivolous, the court may grant counsel's motion and dismiss the appeal. If, however, we find any of the legal points arguable on their merits, we will appoint new counsel to argue the appeal.

In light of the announced procedure for motions for withdrawal, we hold Mrs. Smith's motion to be premature until such time as a no-merit brief is filed.