

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-13-604

| | |
|---|---|
| KRISTA DAWN GASKILL<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** OCTOBER 30, 2013<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV-12-122]<br><br>HONORABLE PATRICIA JAMES, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## BILL H. WALMSLEY, Judge

The Pulaski County Circuit Court terminated the parental rights of appellant Krista Gaskill to her son, H.G. (DOB: 01-03-2009), and awarded permanent custody of her other son, E.L. (DOB: 08-10-2011), to his father.[1] Appellant's counsel has filed a motion to withdraw, along with a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), asserting that there are no non-frivolous issues that would support an appeal. The clerk of this court sent copies of the motion and brief to Gaskill, and she chose to file pro se points for reversal. We affirm the trial court's orders and grant the motion to withdraw.

On January 17, 2012, the Arkansas Department of Human Services (DHS) filed a

---

[1]The trial court also terminated the parental rights of H.G.'s biological father, but he is not a party to this appeal.

petition for ex parte emergency custody and dependency/neglect with respect to H.G. and E.L. Gaskill had given conflicting stories as to how H.G. suffered a fractured arm. Subsequently, a hair-follicle test on H.G. and E.L. revealed that both children tested positive for cocaine and methamphetamine. Further, Gaskill and her boyfriend at the time tested positive for THC.[2] Gaskill could not explain how her children had been exposed to controlled substances. The trial court found probable cause to believe that H.G. and E.L. were dependent–neglected, and they were adjudicated dependent–neglected on March 14, 2012. At the adjudication hearing, there was testimony that H.G. had been diagnosed with leukemia.

A review order was entered July 9, 2012, indicating that, although Gaskill was making progress, she continued to lack stability and made poor choices in her relationships with men. On August 9, 2012, DHS moved to stop unsupervised visitation between Gaskill and her children because Gaskill had given H.G. food and drink prior to a medical procedure, even though she had been warned that the procedure required twelve hours of fasting. As a result of her failure to follow instructions, the medical procedure was delayed. The trial court granted DHS's motion.

In a permanency-planning order entered January 9, 2013, the trial court again noted that Gaskill had made progress, but she lacked transportation, had not stopped smoking, and continued to associate with "questionable men." The trial court warned Gaskill that she had

[2]Gaskill tested positive for THC when E.L. was born, but DHS's case was later closed on this matter for unknown reasons.

limited time to comply with the case plan.

On January 18, 2013, DHS filed a petition to terminate parental rights as to H.G. A termination hearing was held on April 3, 2013, and at the same time, the trial court considered a permanent placement for E.L.

At the April 3, 2013 hearing, there was evidence that Gaskill was involved with several men and lived at six different places since the case was opened. She lived with men she barely knew and men who used illegal drugs. At a home visit in December 2012, caseworkers saw a blunt and a bag of marijuana on a table in plain view. Gaskill blamed a visitor to the home. Gaskill failed to attend AA/NA meetings. Gaskill stopped going to meetings because she disagreed with counselors who said that relapse was a part of recovery. Gaskill failed to maintain stable employment in that she had at least four jobs since the case was opened, and she lied about her termination for absences from a job at Walmart. Gaskill failed to obtain reliable transportation. She failed to stop smoking, even though she insisted that she could quit "cold turkey." Gaskill gave H.G. food and drink in contravention of doctor's orders, which delayed treatment for his cancer. Gaskill missed many of H.G.'s doctor's appointments and left appointments early for various, and often trivial, reasons. Gaskill was dropped from cosmetology school for missing too many classes. The trial court concluded that Gaskill "lacks insight into her problems, foresight into potential problems, and motivation to act in her child's best interests if it means delaying her own gratification."

The trial court found that it was in H.G.'s best interest to terminate Gaskill's parental rights, considering both his likelihood of being adopted and the potential harm if he was

SLIP OPINION

returned to Gaskill's custody. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2011). As for grounds, the trial court found that H.G. had been adjudicated dependent-neglected and continued to be out of Gaskill's custody for more than twelve months and, despite the offer of various services and other meaningful efforts to rehabilitate her and correct the conditions that caused removal, those conditions had not been remedied. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*). Also, other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that return of H.G. to Gaskill's custody was contrary to his health, safety, or welfare, and that, despite the offer of appropriate family services, Gaskill had manifested the incapacity or indifference to remedy the circumstances that prevented return of H.G. to her custody. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*).

Further, the trial court found that it was in E.L.'s best interest to grant permanent custody to his father, Kenneth Lowe. Lowe had obtained temporary custody of E.L. in January 2013. Since that time, E.L. was doing well, and Lowe had provided needed stability in E.L.'s life.

Counsel has discussed the sufficiency of the evidence supporting termination of Gaskill's parental rights as to H.G., and we agree that an appeal would be wholly frivolous. Gaskill had sixteen months to comply with the case plan, yet she failed to seek treatment for drug abuse. Although Gaskill's drug tests were negative, she continued to associate with drug addicts. Gaskill did not maintain stable employment and housing. Although transportation was critical due to H.G.'s medical needs, Gaskill did not have reliable transportation. Also, Gaskill showed little interest in learning about H.G.'s condition until shortly before

4

termination.

Likewise, we agree with counsel that an appeal from the award of permanent custody of E.L. to Lowe would be wholly frivolous. The evidence showed that Lowe had an appropriate home and was financially secure. E.L. was doing well since being placed in Lowe's custody. Lowe provided stability for the child.

Counsel addressed other adverse rulings made at the hearing. There was an objection to the relevance of knowing when Lowe began having sexual relations with Gaskill. This was not relevant under Arkansas Rule of Evidence 401 because it did not make any fact that was of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Civ. P. 401. There was also an objection to argumentative questions by Gaskill's counsel. Pursuant to Arkansas Rule of Evidence 611(a), the trial court must exercise reasonable control over the mode of interrogating witnesses. Ark. R. Evid. 611(a). Counsel admitted that her questions were argumentative, thus agreeing with the sustained objections. These adverse rulings do not provide meritorious grounds for an appeal.

In her pro se points for reversal, Gaskill attempts to explain her conduct, but she makes no persuasive argument for reversal. Significantly, Gaskill still could not explain how H.G.'s arm got broken or how both boys tested positive for controlled substances. Also, it is clear that Gaskill continues to shift blame to others and accepts no responsibility for her actions. Gaskill failed to present any meritorious grounds for reversal.

Based on our examination of the record, we find that counsel has complied with the

 

rules for no-merit petitions. We hold that the appeal is wholly without merit; consequently, we grant counsel's motion to withdraw and affirm the orders terminating Gaskill's parental rights to H.G. and awarding permanent custody of E.L. to his father.

Affirmed; motion to withdraw granted.

HIXSON and BROWN, JJ., agree.

*Deborah R. Sallings*, Arkansas Public Defender Commission, for appellant.

No response.