

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-724

| | |
|---|---|
| EUGENE JONES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered December 17, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. JN2013-356]<br><br>HONORABLE JOYCE WILLIAMS WARREN, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's termination of his parental rights to K.J.1 and K.J.2.[1] Appellant's counsel has filed a motion to withdraw and a no-merit brief, pursuant to *Linker-Flores v. Arkansas Department of Human Services*,[2] and Arkansas Supreme Court Rule 6-9(i),[3] stating that there are no meritorious grounds to support an appeal. The clerk mailed a certified copy of counsel's motion and brief to appellant, informing him of his right to file pro se points for reversal. Appellant failed to file pro se points for

---

[1]The parental rights of the mother, Latasha Bankston, were terminated in the same order, but she is not a party to this appeal.

[2]359 Ark. 131, 194 S.W.3d 739 (2004).

[3](2011).

reversal. We affirm the circuit court's order terminating appellant's parental rights and grant counsel's motion to withdraw.

K.J.2 was born to Latasha Bankston on July 5, 2012, weighing four pounds. Her meconium tested positive for THC. Due to her gestational age of 32 weeks, K.J.2 was in a neonatal intensive care unit with heart issues when a referral for investigation was made to the Arkansas Department of Human Services (DHS). A family services worker made a true finding of newborn illegal substance exposure as to K.J.2. A protective-services case was opened on August 9, 2012, and appropriate services were provided. However, K.J.2 was again admitted to Arkansas Children's Hospital (ACH) on August 24, 2012, for severe acid reflux and failure to gain weight; on September 5, 2012, for reflux; and on December 16, 2012, for a severe virus.

Throughout this time period, the hospital staff had had issues with the behavior of Bankston and appellant, and DHS had had issues locating and communicating with both parents. Accordingly, a medical staffing was held on January 17, 2013, following which both parents were required to sign a behavior contract, the violation of which would result in their restriction from the hospital.

Due to the appearance of mental instability on the part of Bankston, the controlling nature of appellant, an inability to verify a home address for either parent to which K.J.2 could be released, and both parents' lack of cooperation with ACH, Pulaski County Home Health Unit and DHS, DHS took a 72-hour hold on K.J.2 on January 28, 2013.[4]

---

[4]DHS did not take a hold on K.J.1, believing that because he was not left in his mother's care alone, he could remain safe in the home.



On January 31, 2013, DHS filed a petition for ex-parte emergency custody and dependency-neglect as to K.J.2. The circuit court entered an ex-parte order for emergency custody of K.J.2 on the same date; K.J.1 was permitted to remain in the custody of Bankston and appellant.

Following a February 6, 2013 probable-cause hearing for K.J.2, the circuit court entered a probable-cause order in which it took a 72-hour hold on K.J.1. Therein, it found that probable cause existed, and still existed, to protect K.J.2. Also, because K.J.1 was in the home with Bankston and appellant, he was exposed to "the same dynamics of the parent's behaviors and interactions[,]" and because there was "[n]o credible evidence" presented that K.J.1 was never left alone with Bankston, the court took a 72-hour hold on K.J.1 at the hearing.[5] An order reflecting the same was entered February 6, 2013.[6]

Following a February 20, 2013 probable-cause hearing as to K.J.1, the circuit court entered an order on the same date finding that probable-cause existed, and still existed, to protect K.J.1 and that it was in his best interest to continue in DHS's legal custody.

---

[5]We note that DHS filed an amended petition for ex parte emergency custody and dependency-neglect, including K.J.1, on February 11, 2013. This document is not in the addendum. However, we find that appellant's failure to include the amended petition does not prevent this court from addressing the merits of this appeal because the circuit court's February 6, 2013 order had already directed that K.J.1 be removed from the home. Accordingly, DHS's petition was an unnecessary, additional formality. However, the court did enter an amended ex parte order for emergency custody granting DHS's amended petition, including both children, on February 12, 2013.

[6]Following a February 14, 2013 hearing, the court entered an order on the same date setting the date for the probable-cause hearing as to K.J.1 for February 20, 2013. The court detailed the reasons for the delay in issuance of the amended ex parte order for emergency custody and advised that, despite the delay, said order was still issued within the five-business-day time frame set forth in Arkansas Code Annotated section 9-27-315.



Therein, the circuit court adopted the parties' stipulation that the same facts and circumstances still existed that were in existence at the February 6, 2013 probable-cause hearing and that probable cause existed for the issuance of the ex-parte order for emergency custody and that probable cause still existed.

Also on February 20, 2013, the children's attorney ad litem filed a cross-petition for dependency-neglect of both children due to neglect and both parents being unfit. Following a March 6, 2013 hearing, the circuit court entered an adjudication and disposition order accepting the parties' stipulation that both children were dependent-neglected, finding the same to be due to neglect from their mother's inability to care for and protect them due to her unstable housing. Among other things, appellant was ordered to cooperate with DHS; notify DHS, within 48 hours, of any change in his residence and contact information; attend individual counseling; refrain from illegal drugs and alcohol and any prescription medications not prescribed specifically for him; submit to random drug screenings; and obtain and maintain safe, stable housing and stable income.

In a review order entered July 29, 2013, the court found that appellant had partially complied with the case plan and court orders, specifically noting that while he had completed parenting classes, he had only attended seven out of thirty-three visits with the children and had not made himself available for court-ordered random drug screens. The court specifically found that appellant had "very little credibility with the Court." Appellant was ordered to complete a psychological evaluation. The case plan, as to appellant, was dependent on the outcome of his psychological evaluation, which the circuit court deemed was needed to determine if he was an appropriate caregiver.

4



Following a hearing on November 6, 2013, the court entered a review order on November 26, 2013, finding that appellant was not in a position to properly take care of and provide for the children's needs. The circuit court instituted a concurrent goal of adoption. The court found that appellant had again only partially complied with the case plan as he had completed his psychological evaluation, participated and made progress in therapy, and submitted to random drug screens. However, he still did not have appropriate housing, was unemployed, had tested positive on one alcohol screening, and had only attended twelve of twenty-seven visits since the last hearing. Furthermore, the circuit court found that appellant had not made much progress towards alleviating or mitigating the causes of the children's removal from the home. It noted that it was "still concerned with [appellant's] thought processes[.]"

Following a January 23, 2014 hearing, the circuit court entered a permanency planning order on February 5, 2014, authorizing a plan for adoption and authorizing DHS to file a petition for termination of appellant's parental rights. Again, the court found that appellant had only partially complied with the case plan as he still did not have stable housing, income, or employment; had attended only five of seventeen scheduled visits with the children since the last hearing; had not demonstrated an ability to appropriately care for K.J.2's medical condition with the feeding tube; and had tested positive for benzodiazepines and methadone.[7] A termination hearing was set for April 16, 2014.[8] On

---

[7]Appellant was appointed separate counsel in a January 24, 2014 order.

[8]The scheduled termination hearing was continued to May 1, 2014, by order entered on April 17, 2014, due to Bankston's hospitalization. The hearing was continued

SLIP OPINION

March 6, 2014, DHS filed a petition for termination of appellant's parental rights pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(*a*) (twelve months out of the home without remediation of the conditions causing removal); Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(*a*) (other factors arose subsequent to removal); and Arkansas Code Annotated section 9-27-341(b)(3)(B)(ii)(*a*) (willful failure to provide material support or to maintain meaningful contact with the children).[9]

Following a hearing on May 21, 2014, the circuit court entered an order on May 28, 2014, terminating appellant's parental rights and granting DHS the power to consent to the children's adoption. The circuit court found clear and convincing evidence that it was in the children's best interest to grant DHS's petition to terminate appellant's parental rights and that only the "other factors" ground supported termination of appellant's parental rights. It made all other necessary findings. This timely appeal followed.

In compliance with *Linker-Flores* and Rule 6-9(i), counsel ordered the entire record and found that after a conscientious review of the record, there are no issues of arguable merit for appeal. Counsel's brief adequately covered each action that was adverse to appellant below. After carefully examining the record and the brief presented to us, which included all adverse rulings, we conclude that the appeal is wholly without merit. Accordingly, we affirm the termination of appellant's parental rights and grant counsel's motion to withdraw.

---

again by order entered on May 1, 2014, to May 21, 2014, due to appellant's scheduled surgery on May 1, 2014.

[9](2013).

Affirmed; motion to withdraw granted.

HARRISON and VAUGHT, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, for appellant.

No response.