

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-14-861

| | |
|---|---|
| GLENDORA TAYLOR<br>APPELLANT | **Opinion Delivered** February 4, 2015 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION<br>[NO. 60JV-2014-1219] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | HONORABLE WILEY A. BRANTON, JR., JUDGE |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**RAYMOND R. ABRAMSON, Judge**

This appeal arises from an order of the Pulaski County Circuit Court terminating appellant Glendora Taylor's parental rights to her son, D.W. Taylor's attorney has filed a no-merit brief and a motion to be relieved as counsel in accordance with Arkansas Supreme Court Rule 6-9(i)(1) (2013) and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), asserting there is no issue of arguable merit to support the appeal. Counsel's motion is accompanied by an abstract and addendum of the proceedings below and a brief that lists all adverse rulings made at the termination hearing and explains why there is no meritorious ground for reversal. The clerk of this court sent by certified mail copies of the motion and the abstract, brief, and addendum to Taylor at her last known address, informing her that she had the right to file pro se points for reversal under Arkansas

Supreme Court Rule 6-9(i)(3). Taylor has not submitted any pro se points.

On March 29, 2013, D.W. was born prematurely with multiple medical problems including, heart, lung, and clubfeet ailments. His mother, Taylor, was forty-five years old at the time, and his father, David Lee Wood Jr.,[1] was nineteen years old. Taylor has an IQ of 68, and Wood has an IQ of 70.

On July 2, 2013, the Arkansas Department of Human Services (DHS) placed a seventy-two-hour hold on D.W. due to his medically fragile condition and his parents' inability to physically and mentally accommodate his needs because of their homelessness and mental retardation. On July 9, 2013, the juvenile division of the Pulaski County Circuit Court found probable cause for the emergency conditions. The court ordered Taylor to submit to a psychological evaluation and random drug-and-alcohol screens; obtain and maintain stable housing and income; and attend parenting classes.

On August 13, 2013, the court adjudicated D.W. dependent-neglected. Specifically, the court found that aggravated circumstances existed due to D.W.'s extreme medical condition and his need for round-the-clock care. The court found that Taylor had a history of unstable housing and did not have adequate housing for a newborn on oxygen with medical issues. The court noted Taylor's psychological evaluation, which revealed a diagnosis of mild mental retardation and personality disorder. The court ordered Taylor to follow the recommendations of the psychological evaluation and continued its previous order that Taylor submit to random drug-and-alcohol screens; obtain and maintain stable housing and income;

---

[1]Wood was not the legal father at D.W.'s birth because Taylor is married to another man. However, paternity was subsequently established by DNA testing.

and attend parenting classes. The court also found the case was "a long shot for reunification," but ordered that as the goal. The court set a permanency-planning hearing for November 12, 2013.

At the November 12, 2013 hearing, the court again noted Taylor's psychological evaluation and concluded that the evaluation indicated a poor prognosis regarding the prospect of reunification. The court ordered Taylor to undergo training to care for children with special needs and to quit smoking. The court continued the goal of reunification to give Taylor the full statutory time to seek reunification.

The court held a second permanency-planning hearing on April 18, 2014. At that hearing, the court recognized Taylor's efforts to comply with the court's orders but questioned whether any progress had been made. The court noted that, from mere observation, Taylor appeared dysfunctional and further noted that Taylor had not raised any of her six children. The court authorized a change in the goal of the case to termination of parental rights and adoption.

On May 20, 2014, DHS filed a petition for termination of parental rights alleging three grounds for termination: (1) D.W. had been adjudicated dependent-neglected and had continued to be out of the custody of Taylor for twelve months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions that caused removal, those conditions had not been remedied by Taylor; (2) other factors or issues arose subsequent to the filing of the original petition for dependency neglect that demonstrated the return of D.W. to the custody of Taylor was contrary to his health, safety, or welfare and that, despite the offer of appropriate family services, Taylor had manifested the incapacity and

indifference to remedy the subsequent issues or factors or to rehabilitate her circumstances that prevented the placement of D.W. in her custody; and (3) Taylor had been found by the court to have subjected D.W. to aggravated circumstances.

On June 24, 2014, the court held a hearing on the petition. At the hearing, Taylor testified that she had obtained housing with Wood and Wood's mother. She stated that she had income from Social Security disability but that Wood was the payee on her disability check. She explained that Wood was the payee because of her mental retardation. Sylvia Jones, Taylor's therapist, testified about Taylor's progress. She stated that Taylor never demonstrated the ability to raise children and no evidence of material change existed. Dr. Paul Deyoub, a forensic psychologist, testified about his psychological evaluation of Taylor. He referenced Taylor's mild mental retardation and personality disorder and stated that he did not think Taylor had the mental capacity to adequately care for a child with multiple medical issues. Dr. Amy Brunt, D.W.'s physician, testified about D.W.'s medical condition. She stated that D.W. will never be able to function independently and will always require round-the-clock care. Kasheena Walls, who sat in for the adoption specialist on the case, also testified at the hearing that a prospective adoptive home existed at the time of the hearing.

On July 15, 2014, the court entered an order terminating Taylor's parental rights.[2] The court found that D.W. was adoptable based on the testimony of Kasheena Walls. The court further found by clear and convincing evidence that it was in D.W.'s best interest to terminate

_____

[2]The court also terminated Wood's parental rights; however, Wood is not a party to this appeal.

Taylor's parental rights based on the second and third grounds pled by DHS.[3] Specifically, the court's order stated that Taylor had "manifested [her] incapacity to remedy issues caused by [her] mental functioning, [and] no amount of services delivered . . . would raise [her] to the minimum level necessary for [her] to be fit and appropriate to care for a child within a reasonable time." Taylor filed a notice of appeal on July 29, 2014. On November 5, 2014, Taylor's counsel filed a motion to withdraw as set forth above. Counsel contends that this appeal is without merit.

Having carefully examined the record and the brief presented to us, we find that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases. We also conclude that the appeal is wholly without merit. Accordingly, we grant counsel's motion to withdraw and affirm the order terminating Taylor's parental rights.

Affirmed; motion to withdraw granted.

HARRISON and GLOVER, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, for appellant.

No response.

---

[3]The court dismissed the first ground because D.W. had not been out of Taylor's custody for twelve months.