Cite as 2015 Ark. App. 283

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-1113

| | |
|---|---|
| B.M. <br><br> APPELLANT <br><br> V. <br><br><br> ARKANSAS DEPARTMENT OF HUMAN SERVICES <br> APPELLEE | **Opinion Delivered** APRIL 29, 2015 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION <br> [NO. 60JV-13-827] <br><br> HONORABLE WILEY A. BRANTON, JR., JUDGE <br><br> AFFIRMED; MOTION TO WITHDRAW GRANTED |

## CLIFF HOOFMAN, Judge

Appellant B.M. appeals from the order of the Pulaski County Circuit Court terminating her parental rights to her daughter, K.M. Appellant's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Rule 6-9(i) of the Rules of the Arkansas Supreme Court and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). The clerk of this court mailed a certified copy of counsel's motion and brief to appellant, informing her of her right to file pro se points for reversal, but no such points have been filed.[1] We grant counsel's motion to withdraw and affirm the termination order.

Appellant was thirteen years old when she became pregnant with K.M. (DOB

---

[1] When the first certified packet mailed to appellant was returned, her counsel obtained an updated address. A second packet mailed to this new address was also returned, marked "No Such Number." Counsel has no additional contact information for appellant.

7/15/12). K.M.'s father, Vanoy Green, who was twenty-one years old at the time, was convicted of statutory rape of appellant and sentenced to a twenty-year term of imprisonment in Texas. The Arkansas Department of Human Services (DHS) became involved with appellant's family in November 2012 after appellant was adjudicated delinquent due to a domestic battery against her mother, Kristil Mitchell. Appellant violated the conditions of her probation in February 2013, and she was placed in juvenile detention, followed by a residential-treatment program at Youth Home. K.M. initially remained in the custody of appellant's mother, Kristil; however, despite the fact that services were offered to the family to prevent removal, DHS eventually exercised a seventy-two-hour hold of K.M. on April 25, 2013, due to Kristil's unfitness and inadequate housing.

Both appellant and K.M. were adjudicated dependent-neglected on July 11, 2013, as a result of parental unfitness. The circuit court found that appellant was an unfit parent, partly based on her family history of instability, and noted that, although the court had previously attempted to release her from detention, appellant did not comply with the court's directives. The court stated that appellant's behavior was out of control, that she was sexually promiscuous, and that she would not follow rules or directives; thus, the court ordered that she remain in a residential facility. The circuit court set the goal of K.M.'s case as reunification, ordered that appellant complete residential treatment and follow the recommendations upon discharge, and ordered supervised visitation with K.M. The court warned appellant that she had one year to work toward reunification with her daughter and that after one year, the court would have to consider alternative means of achieving

permanency for K.M. unless there were compelling reasons to continue with reunification efforts. The court stated that for it to find such compelling reasons, appellant would have to make significant, measurable progress, and there would have to be a likelihood that reunification could occur within a time period of a few months.

A permanency-planning hearing was held on February 11, 2014. The circuit court continued the goal of reunification, stating that it would give appellant the full statutory time period of one year to make herself a fit and appropriate parent. The court found that the toxicity of appellant's parents was a concern because it had caused appellant to have dysfunction of her own. The court noted that it was concerned about K.M. also being negatively affected if she were to be returned to appellant's custody. The court found that appellant "still had a long way to go" and that she needed to show maturity and "step up to the plate." The court was disturbed by appellant's desire to maintain a relationship with Green, noting that she had been corresponding with Green's sister via Facebook. The court found that any relationship between the Green family and appellant or K.M. was inappropriate and that appellant needed to demonstrate to the court that Green was out of the picture.

Another permanency-planning hearing was held on April 29, 2014, after K.M. had been out of appellant's custody for one year. The circuit court found that there were issues with appellant's trustworthiness and credibility because she had been dishonest when she initially testified at the hearing that she had not continued to have contact with Green's family and that she did not know where her mother was living. After considering her history and

track record, the court found that there were no compelling reasons to give appellant more time to pursue reunification and authorized DHS to file a petition for termination of parental rights. The court noted that termination was not a foregone conclusion and continued services to appellant; however, the court reiterated its concerns about appellant's credibility and her real intentions regarding Green. Thus, the court advised appellant that she needed to address her issues and also achieve the highest level possible at Youth Home.

On May 20, 2014, DHS filed a petition to terminate appellant's and Green's parental rights to K.M. As grounds for termination with regard to appellant, DHS alleged (1) that K.M. had been adjudicated dependent-neglected and remained out of the home for more than twelve months and that the parents had failed to remedy the conditions causing removal; (2) that subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose that demonstrated that return of K.M. to the custody of the parents was contrary to the child's health, safety, or welfare and that, despite the offer of appropriate family services, the parents had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parents' circumstances that prevent return of the child to the custody of the parents; and (3) that the parent is found by the court to have subjected the child to aggravated circumstances.

The termination hearing was held on July 29, 2014. Deborah Penny, appellant's therapist at Youth Home, testified that she had worked with appellant since October 2013, when appellant was admitted to the residential-treatment program. Penny stated that appellant had made significant progress during treatment, that she had attained the highest

level possible at Youth Home, and that she was ready to be discharged from the program. Penny indicated that appellant had demonstrated increased maturity and consequential thinking skills, including her understanding that contact with her family or with Green could jeopardize her having custody of K.M. According to Penny, appellant had a good prognosis, although she would continue to need structure in a step-down facility. Penny stated that she had discussed the possibility of K.M.'s being placed with appellant in a therapeutic foster home, although one had not yet been identified. Penny indicated that it could take approximately thirty to ninety days for appellant to adapt to her new environment and for K.M. to be gradually integrated into the home. In response to the court's concerns about appellant's continued contact with Green, Penny agreed that this had been an issue as recently as the last court hearing and that it was only since the goal had been changed to termination that appellant had attempted to comply with the court's directives in this regard. Although Penny opined that, due to her progress, appellant's parental rights should not be terminated, Penny agreed that she was qualified to testify as to what was best only for appellant, not K.M.

Toni Hansberry, the DHS caseworker for the family, agreed with Penny that appellant should be given more time to demonstrate that she can be an appropriate parent to K.M. because she had not been given an opportunity to do so during the case. Hansberry indicated that she was hoping to find a therapeutic foster home for appellant, where after a period of transition and additional visitation, K.M. could be placed with her. According to Hansberry, the supervised visits between appellant and K.M. had gone well, although she noted that K.M.'s foster parent had expressed concern over how appellant was taking care of the child

as recently as April. When the court asked Hansberry how much additional time appellant would need for reunification to occur, Hansberry indicated that appellant, who was sixteen years old at the time of the hearing, would have to be at least eighteen years old, have stable employment and housing, and demonstrate appropriate parenting skills. Hansberry agreed that it was appellant's fault that she had been placed in a detention facility and had remained there for twenty months. She further agreed that K.M. had not lived with appellant since she was four or five months old. Hansberry testified that K.M. was adoptable and that DHS would have no problem finding an adoptive home for her.

Appellant testified that she had purposely not had contact with Green or his family since May 2014 because she did not want her parental rights terminated. She did testify, however, that she did not think that what Green did to her was wrong because it was consensual. She also indicated that it was not wrong for a twenty-one-year-old to have sex with a thirteen-year-old, although she would not allow her daughter to do so. Appellant further stated that she thought it would be good for K.M. to know Green's family. She requested that the court give her more time to work toward reunification with K.M. and testified that she could learn how to be a parent if given the chance to live in the same home with her child.

After extensively discussing the history of the case and all the evidence presented, the circuit court found that there was clear and convincing evidence to support the termination of appellant's parental rights on all three grounds alleged with respect to appellant in the petition. The court further found that termination was in K.M.'s best interest, specifically

considering K.M.'s adoptability and the potential harm to her health and safety if custody were to be returned to appellant. The termination order was entered on October 1, 2014, and appellant timely appealed from this order.[2] Appellant's counsel has filed a no-merit brief pursuant to Arkansas Supreme Court Rule 6-9(i) (2014), alleging that there are no issues of arguable merit for appeal.

The first adverse ruling discussed by counsel is the order granting the petition for termination. A trial court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Dinkins*, *supra*. On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

Pursuant to Arkansas Code Annotated section 9-27-341(b)(3), an order terminating parental rights shall be based upon a finding by clear and convincing evidence that it is in the

---

[2] The circuit court also terminated Green's parental rights in this order; however, he is not a party to this appeal.

best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent. The order terminating parental rights also must be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B).

While the circuit court's order in this case found clear and convincing evidence to support all three grounds alleged in the termination petition that were pertinent to appellant, only one ground must be proved to support termination. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Counsel therefore discusses only the subsequent-factors ground for termination, asserting that any argument as to this ground on appeal would be wholly frivolous.

We agree with counsel that there was sufficient evidence presented to support the termination of appellant's parental rights based on the subsequent-factors ground found in Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(*a*). As support for its finding on this ground for termination, the circuit court noted appellant's slow response to efforts at treatment, her prior deceitfulness and lack of credibility with the court, and the fact that she still wanted K.M. to have access to and know the Green family despite the fact that Green had been convicted of raping her. The court found that, based on all of these factors, there were no compelling reasons to delay permanency for K.M. The circuit court was not clearly erroneous in finding that termination was warranted based on this evidence, which demonstrated that appellant was incapable of remedying the issues that prevented the return

of K.M. within a reasonable period of time as viewed from the child's perspective. *See* Ark. Code Ann. § 9-27-341(a)(3) (Supp. 2013). Thus, there would be no merit to an appeal on this issue.

There was also clear and convincing evidence to support the circuit court's finding that it was in K.M.'s best interest for termination to occur. The court found that two-year-old K.M. was adoptable based on the testimony of Hansberry that there would be no problem finding an adoptive home for the child. The court also found that there would be potential harm to K.M.'s health, safety, and welfare if she were to be returned to appellant's custody based on appellant's lack of credibility and trustworthiness regarding whether she would contact the Green family in the future. This finding was supported by appellant's own testimony at the termination hearing that she did not think that what Green did to her was wrong and that she thought it would be good for K.M. to know the Green family. The court thus found that it was highly probable that K.M. would be exposed to family dysfunction if returned to appellant's custody.

While the court was sympathetic to the fact that appellant is a young mother and recognized that she had made recent progress in the case, the circuit court found that her "eleventh-hour efforts" should not be given much weight, especially considering her "significant and material credibility issues." As the circuit court noted, a parent's overtures toward complying with the case plan and court orders following the permanency-planning hearing and prior to the termination hearing are an insufficient reason not to terminate parental rights. Ark. Code Ann. § 9-27-341(a)(4)(A) (Supp. 2013). The court also

recognized that it might be in appellant's best interest to have her daughter returned; however, the court stated that it was charged with the responsibility to decide what was in K.M.'s best interest, not appellant's. Given the evidence presented in this case, the circuit court's finding that it was in K.M.'s best interest to terminate appellant's parental rights was not clearly erroneous, and there would be no merit to an appeal on this basis.

As counsel discusses in her brief, there were two additional rulings adverse to appellant during the termination hearing, when the attorney ad litem objected to leading questions asked of appellant by her trial counsel regarding whether (1) appellant's mother was a good role model and (2) appellant's real motivation for her recent avoidance of the Green family. Both of these objections were sustained by the circuit court. There would be no merit to an appeal challenging either of these rulings, as the circuit court did not abuse its discretion in not allowing leading questions during direct examination, and there was also no prejudice to appellant based on the other evidence that was admitted regarding her family history and her intentions toward the Green family. *See Blakes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 379, 374 S.W.3d 898.

Based on our review of the record and the brief submitted, we conclude that counsel has complied with Ark. Sup. Ct. R. 6-9(i) and agree that the appeal is without merit. Therefore, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

VAUGHT and BROWN, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for appellant.

No response.

10