
# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–17–442

| | |
|---|---|
| MONICA MARIE MARION<br>APPELLANT | **Opinion Delivered:** November 8, 2017 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION<br>[NO. 60JV–15–1689] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | HONORABLE PATRICIA JAMES, JUDGE |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## BART F. VIRDEN, Judge

The Pulaski County Circuit Court terminated the parental rights of appellant Monica Marion to her two sons, M.M. (DOB: 12-26-2001), and J.L. (DOB: 3-3-2004). Counsel filed a brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), along with a motion to withdraw on the basis that there is no merit to this appeal. Marion was notified that she could file pro se points for reversal, and she took the opportunity to file such points. We affirm the termination and grant counsel's motion to withdraw.

### I. *No-Merit Appeals*

Arkansas Supreme Court Rule 6-9(i)(1) allows counsel for an appellant in a termination–of–parental–rights case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has

no meritorious basis for an appeal. The petition must include an argument section that lists all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(i)(1)(A). The petition's abstract and addendum shall contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(i)(1)(B). Here, the only adverse ruling was the termination itself.

## II.    *Procedural History*

The Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect alleging neglect and parental unfitness. Attached to the petition was an affidavit by a DHS family-service worker who attested that in early November 2015 DHS had received a report that M.M. and J.L. were residing at the Salvation Army with Marion; that Marion had locked her sons out of their room at the shelter one night for twenty minutes; that M.M. and J.L. had told investigators that Marion "needs mental help" because she talks to herself, does not take baths, and will not wash their clothes; that Marion had received a check for $1,466 a few days prior and that she had spent all of it; and that Marion had tested positive for THC. DHS subsequently learned that Marion was being removed from the shelter and thus exercised a seventy-two-hour hold on the boys on December 7, 2015. An ex parte order for emergency custody was entered, and Marion later stipulated to probable cause. The children were adjudicated dependent-neglected based on neglect and parental unfitness. DHS was ordered to provide services to the family. A review order was entered finding that Marion was not in compliance with the

case plan and court orders. In its permanency-planning order, the trial court again found that Marion was not in compliance, and the goal of the case was changed to adoption and termination of parental rights. DHS filed a petition to terminate Marion's parental rights. Following a hearing on February 1, 2017, the trial court found that DHS had proved three grounds as alleged in its petition, including Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (twelve-month failure to remedy), 9-27-341(b)(3)(B)(vii) (subsequent factors), and 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)* (aggravated circumstances).

III.   *Discussion*

An order forever terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2015). The order must also find by clear and convincing evidence one or more grounds listed in section 9-27-341(b)(3)(B).

We agree with counsel that the only adverse ruling was the termination itself. Counsel addresses adoptability and potential harm, and after noting that only one ground is necessary to support termination of parental rights, counsel discusses the subsequent-factors ground. Although we find that counsel complied with Rule 6-9(i), we think a stronger case could be made under either of the other two grounds.

The boys were removed from Marion's custody on December 7, 2015, and at the time of the termination hearing had been out of her custody for approximately fourteen

months. They were removed from Marion's custody due to her instability, drug use, untreated mental-health issues, neglect, and parental unfitness. She was offered many services, including random drug screens, a drug-and-alcohol assessment, counseling, a psychological evaluation, and parenting classes, and she was ordered to maintain stable housing/employment/income and to keep DHS informed of her contact information. Marion submitted to only one random drug screen, and she did not submit to the hair-follicle test until almost a year after the case had been opened. She did not obtain a drug-and-alcohol assessment or a psychological evaluation. She attended a counseling session about one month before the termination hearing. She claims to have completed parenting classes but did so before this case was opened because people "kept calling DHS on her." Marion was homeless at the beginning of the case and was still homeless at the time of the termination hearing. Although she had a cosmetology license, she had no job. A family service worker for DHS testified that he had no way of contacting Marion throughout the entire case. Although Marion claimed to be living with her sister and an aunt, Marion would not provide DHS with their contact information.

These facts clearly support the failure-to-remedy and aggravated-circumstances grounds. Moreover, there was evidence that the boys' foster parents wished to adopt them, and there was potential harm in returning custody of the boys to Marion in that she was still homeless; she would not attempt to get a job to provide income to support the boys; and she had not sought help for her drug use or mental-health issues.

Our review of the record, the no-merit brief, and Marion's pro se points for reversal convinces us that counsel has complied with the requirements for no-merit briefs in

termination-of-parental-rights cases and that the appeal is wholly without merit. Although Marion filed pro se points for reversal in the form of a letter to this court, it is simply a plea for this court to return M.M. and J.L. to her custody. The letter describes the obstacles Marion has faced as a single parent, her anger as a former foster child, and the efforts she has made to raise her sons in the proper environment. This court, however, does not weigh the evidence and cannot second-guess the trial court's credibility determinations. *Posey v. Ark. Dep't of Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). We therefore affirm the termination of Marion's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

KLAPPENBACH and BROWN, JJ., agree.

*Dusti Standridge*, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.