SLIP OPINION

Cite as 2015 Ark. App. 190

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-1009

| | |
|---|---|
| DIANA HAWKINS<br>APPELLANT | **Opinion Delivered** March 18, 2015 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. J-12-876] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | HONORABLE STACEY ZIMMERMAN, JUDGE |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## RAYMOND R. ABRAMSON, Judge

This appeal arises from an order of the Washington County Circuit Court terminating appellant Diana Hawkins's parental rights to her twin daughters, A.A. and E.A. Hawkins's counsel has filed a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004) and Arkansas Supreme Court Rule 6-9(i), asserting that there are no issues of arguable merit to support the appeal and requesting to be relieved as counsel. The motion is accompanied by an abstract and addendum of the proceedings below and a brief explaining why none of the trial court's rulings present a meritorious ground for appeal. The clerk of this court notified Hawkins that she had the right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(i)(3). Hawkins has filed pro se points, and a reference letter has also been submitted on her behalf. The Arkansas Department of Human Services (DHS) and the attorney ad litem chose not to file a brief.

However, they did file a joint response to Hawkins's pro se points. We affirm and grant counsel's motion to be relieved as counsel.

On November 8, 2012, Hawkins entered a children's safety center with her two-year-old twin daughters, A.A. and E.A. Neither child had socks or shoes, and A.A. was not wearing a shirt. Hawkins stated that she had been evicted from the home that she shared with the girls' father, Thomas Allman. She explained that she had no other place to live, was having symptoms of withdrawals, and could not care for the children. She also reported that she was fearful of Allman because he had abused her and threatened her life. Hawkins submitted to a drug test, and she tested positive for methamphetamines and benzodiazepines. Hawkins voluntarily released custody of the children to DHS, and DHS exercised a seventy-two-hour hold on the girls.[1] The case proceeded through the probable-cause and adjudication phases where A.A. and E.A. were adjudicated dependent-neglected. The circuit court set reunification as the goal of the case and granted Hawkins supervised visits with the children.

On February 12, 2014, the circuit court held a fifteen-month permanency-planning hearing. The court found that Hawkins had substantially complied with its orders and had made significant progress in achieving reunification. The court continued with a goal of reunification and granted Hawkins unsupervised visits with the children. The court further

---

[1]DHS had a history with Hawkins before November 8, 2012. Specifically, in May 2010, DHS opened a protective-services case because A.A. and E.A. had been prenatally exposed to opiates. Further, in February 2011, DHS opened a protective-services case for inadequate supervision of A.A. and E.A. For the inadequate-supervision case, DHS provided services to Hawkins, which included home visits, drug screens, transportation, and housing referrals.

SLIP OPINION

authorized a trial home placement beginning April 2, 2014, on the condition that Hawkins obtain appropriate housing, but she did not. Thus, the trial placement was unsuccessful.

On June 17, 2014, DHS filed a petition for the termination of Hawkins's parental rights. In the petition, DHS alleged three grounds for termination: (1) the juveniles had been adjudicated by the court to be dependent-neglected and had continued to be out of the custody of Hawkins for twelve months and, despite a meaningful effort by DHS to rehabilitate Hawkins and correct the conditions that caused removal, those conditions had not been remedied; (2) the children had lived outside the home of Hawkins for a period of twelve months, and Hawkins had willfully failed to provide significant material support in accordance with her means or to maintain meaningful contact with the children; and (3) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that placement of the juveniles in the custody of Hawkins was contrary to their health, safety, or welfare and that, despite the offer of appropriate family services, Hawkins had manifested the incapacity or indifference to remedy the subsequent issues or factors or to rehabilitate her circumstances that prevented the placement of the juveniles in her custody. A termination hearing was set for August 27, 2014.

At the termination hearing, A.A. and E.A.'s foster mother testified that she and her husband wanted to adopt the girls. She further testified that A.A. and E.A. had stayed at a respite home on two different occasions and that family also wanted to adopt the girls.

Hawkins testified that she had maintained sobriety and ended her violent relationship with Allman. She stated that she had worked for Wal–Mart for nine months during the

3

twenty-one months the children were in foster care. She also stated that she worked for O'Reilly Auto Parts for two weeks. However, she testified that she currently did not have employment but had applied for jobs and could be rehired at Wal-Mart. As to her housing, Hawkins explained that she stayed at Vista Health, a mental and behavioral health facility, after she left A.A. and E.A. at the children's safety center. She eventually left Vista Health and went to live with Regina Goode. After living with Goode for a few days, she felt that she needed treatment for her drug addiction so she went to Decision Point to receive in-patient treatment. She then moved to Oxford House, an addiction recovery house. After living at Oxford House for some time, Hawkins moved into her mother's home. She then decided to rent a room from Goode. However, after a year and a half, Goode kicked Hawkins out of the house. Hawkins then went to live with her friend Sceptor and lived with her for a few months. She then moved back in with her mother. A week before the termination hearing, she moved into Havenwood.

Mary Lynn Montgomery, a case manager at Havenwood, testified that Havenwood is a residential facility that fosters homeless, single parents. She explained that Havenwood offers life-skills training, parenting classes, and group sessions. She stated that as a condition of residency, Hawkins must have a job or start going to school within forty-five days of moving into the facility.

Miranda Collins, a DHS worker who oversaw the case, also testified at the hearing. She stated that the girls were highly adoptable. She further recommended that the court terminate Hawkins's parental rights. Collins recognized that Hawkins had made some progress

but noted that Hawkins did not have employment. She further recognized that Hawkins had housing at Havenwood but was concerned about Hawkins maintaining that housing. She noted that she had been working with Hawkins for twenty-one months and Hawkins's living situation and employment continued to be unstable over that period.

Following the hearing, on September 8, 2014, the circuit court entered an order terminating Hawkins's parental rights. Specifically, the court found that the children were highly adoptable based on the testimony of Collins and that potential harm existed if they were returned to Hawkins. Further, the court determined that DHS proved all three grounds pled in its petition.

In her pro se points, Hawkins asks this court to reverse the circuit court's decision because she now has a job as a medical courier and has been employed for three months. Further, the interim director of Havenwood has written a letter to the court stating that Hawkins has excelled since arriving at Havenwood. While Hawkins's efforts to improve herself are commendable, this court has held that post-termination progress is not a ground for reversal of an order terminating parental rights. *See Weaver v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 437.

Having carefully examined the record and the brief presented to us, we find that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases. We also conclude that the appeal is wholly without merit. Accordingly, we grant counsel's motion to withdraw and affirm the order terminating Hawkins's parental rights.

Affirmed; motion to withdraw granted.

KINARD and VAUGHT, JJ., agree.

*Travis Ragland*, for appellant.

No response.