

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–15–142

| | |
|---|---|
| BRITTANY STUDWAY<br>                **APPELLANT**<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILD<br>                **APPELLEES** | **Opinion Delivered** JUNE 3, 2015<br><br>APPEAL FROM THE ST. FRANCIS<br>COUNTY CIRCUIT COURT<br>[NO. 62JV-13-238-5]<br><br>HONORABLE ANN HUDSON,<br>JUDGE<br><br>AFFIRMED; MOTION TO<br>WITHDRAW GRANTED |

### DAVID M. GLOVER, Judge

Brittany Studway's parental rights to her daughter, M.S., were terminated by an order entered November 24, 2014.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6–9(i), Studway's attorney has filed a no-merit brief asserting that there are no issues that would support a meritorious appeal and a motion requesting to be relieved as counsel. The clerk of this court attempted to send Studway a copy of her counsel's brief and motion to withdraw, along with a letter informing Studway of her right to file pro se points; the certified packet was returned marked "Not Deliverable as Addressed, Unable to Forward." We affirm the termination and grant counsel's motion to withdraw.

---

[1]The parental rights of M.S.'s putative fathers, Daniel Wiggins and Ryan Stokes, were also terminated in this order, but they are not parties to this appeal.

The Department of Human Services (DHS) filed a petition for emergency custody of M.S. on August 9, 2013, eight days after M.S. was born, after taking a seventy-two-hour hold on M.S. on August 7 because M.S. tested positive for marijuana, cocaine, and benzoic drugs after birth and because DHS was unable to perform a risk assessment on Studway. An order for emergency custody was granted on August 12, 2013, and an amended order for emergency custody was filed later that month. The trial court entered an order of probable cause in August 2013, continuing custody with DHS; an amended probable-cause order was filed in September 2013.

M.S. was adjudicated dependent-neglected in an order filed in September 2013. While the goal of the case remained reunification, the trial court noted that Studway was not employed, did not have stable housing, was living in Tennessee while maintaining a residence in Arkansas, and was receiving government benefits from the State of Arkansas. The court directed Studway to make efforts to obtain services toward reunification, as she was living in Tennessee and not in Arkansas where services could be provided. In a review order filed in January 2014, the court found that the appropriate permanency plan was still reunification; however, the court noted that Studway had missed several visits and found that DHS did not have to transport M.S. to West Memphis for visitation unless Studway called the day before the visit. Studway informed the court that she was now living in Memphis and was employed. DHS agreed to send the necessary paperwork to Tennessee to complete a home assessment on Studway.

At the permanency-planning hearing, the court changed the goal of the case to

adoption, specifically finding that Studway had failed to comply with the case plan by not exercising visitation on a consistent basis, not obtaining stable housing or employment, and by moving without keeping DHS informed of her location. The court further found that Studway had failed to complete any services offered to her by DHS, that she had accepted an apartment provided by the battered women's shelter but had not lived in the apartment, that she had not taken advantage of transportation services offered to her for visitation by DHS, and that she had failed to make significant, measurable progress toward reunification.

On June 10, 2014, DHS filed a petition to terminate Studway's parental rights, alleging that it was in the best interest of M.S. for Studway's parental rights to be terminated and alleging four grounds pertaining to Studway for the termination of her parental rights.[2] The termination hearing was held on August 26, 2014. Evidence adduced at that hearing indicated that Studway had done virtually nothing that the court had ordered her to do. Studway admitted that she had not undergone a drug assessment; she did not have a job; she did not have stable housing that had been approved by DHS (she was living in Wisconsin at the time of the termination hearing); and she visited M.S. only a handful of times—eight times out of fifty-two possible visits. Studway is essentially a stranger to M.S. The court found that it was in M.S.'s best interests for Studway's parental rights to be terminated and that DHS had proved that, despite the efforts made by DHS to rehabilitate the home and correct the conditions that caused removal, Studway had not remedied those conditions. The

---

[2] The four bases alleged by DHS for the termination of Studway's parental rights were Arkansas Code Annotated sections 9–27–341(b)(3)(B)(i)(*a*); 9–27–341(b)(3)(B)(ii)(*a*); 9–27–341(b)(3)(B)(iv); and 9–27–341(b)(3)(B)(vii).

3

court entered an order terminating Studway's parental rights on November 24, 2014.

We review termination-of-parental-rights cases de novo. *Spangler v. Arkansas Dep't of Human Servs.*, 2012 Ark. App. 404. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Watson v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 28. DHS must prove by clear and convincing evidence—that degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established—that it is in the children's best interest to terminate parental rights, as well as the existence of at least one statutory ground for termination. *Spangler, supra.* In determining the best interest of the juveniles, a trial court must take into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Myers v. Arkansas Dep't of Human Servs.*, 2011 Ark. 182, 380 S.W.3d 906. When the burden of proof is clear and convincing evidence, the inquiry on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Watson, supra.* However, we do give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

In addition to termination of her parental rights, there were two rulings adverse to

SLIP OPINION

Studway during the termination hearing. Both objections were from DHS counsel on the basis of hearsay. Counsel's brief adequately covered the decision to terminate and each objection and why there is no arguable merit to an appeal of these rulings.

Having carefully examined the record and the brief presented to us, we hold that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and conclude that the appeal is wholly without merit. Accordingly, the order terminating Studway's parental rights is affirmed, and counsel's motion to withdraw is granted.

Affirmed; motion to withdraw granted.

ABRAMSON and BROWN, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, for appellant.

No response.