

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-15-119

| | |
|---|---|
| MARY ANN QUALLS<br>APPELLANT | **Opinion Delivered:** June 3, 2015 |
| V. | APPEAL FROM THE YELL COUNTY CIRCUIT COURT<br>[NO.JV-2013-35] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | HONORABLE TERRY SULLIVAN, JUDGE |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's termination of her parental rights to T.H., born 4/5/2013.[1] Appellant's counsel has filed a motion to withdraw as counsel and a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*,[2] and Arkansas Supreme Court Rule 6-9(i),[3] stating that there are no meritorious grounds to support an appeal. The clerk mailed a certified copy of counsel's motion and brief to appellant, informing her of her right to file pro se points for reversal. Appellant has filed no pro se points. We affirm and grant counsel's motion to withdraw.

---

[1] The parental rights of Brandon Hixson, T.H.'s father, were terminated in the same order pursuant to Hixson's signed consent to termination. Hixson has not appealed the termination of his rights and is not a party to this appeal.

[2] 359 Ark. 131, 194 S.W.3d 739 (2003).

[3] (2014).

At the time of T.H.'s birth, a report was made to the Arkansas Child Abuse Hotline alleging that T.H. had been born with an illegal substance in his system, as appellant had tested positive for marijuana at the time of T.H.'s birth and had admitted to using marijuana during her pregnancy. Despite the report, following an assessment by a family-services worker (FSW), T.H. was allowed to be discharged from the hospital with appellant.

The FSW later learned that appellant had outstanding warrants for multiple drug-related offenses specifically involving methamphetamine.[4] Appellant was arrested on her outstanding warrants on April 12, 2013. Due to there being no appropriate caretaker for T.H. at that time of her arrest, a 72-hour hold was taken on T.H. The Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect on April 15, 2013. The circuit court granted DHS's petition in its ex-parte order for emergency custody entered April 16, 2013.

The circuit court entered a probable-cause order on May 10, 2013, finding probable cause by stipulation of the parties. T.H. was adjudicated dependent-neglected as a result of neglect—as stipulated by the parties—in the circuit court's adjudication and disposition order entered July 9, 2013. Of note, appellant was ordered to (1) cooperate with DHS, (2) have a psychological evaluation and follow its recommendation, (3)

---

[4] Appellant's outstanding warrants were for possession of methamphetamine or cocaine with purpose to deliver; possession of schedule vi controlled substance with purpose to deliver; possession of controlled substance—methamphetamine or cocaine; possession of a counterfeit substance without prescription (third or subsequent offense); use or possession of paraphernalia to manufacture, etc., methamphetamine/cocaine; use or possession of paraphernalia to manufacture, etc., controlled substance (not methamphetamine/cocaine); and an enhancement.

participate in individual/family counseling as recommended by a therapist, (4) attend parenting classes, (5) complete a drug and alcohol assessment, (6) refrain from use of illegal drugs and alcohol, (7) obtain and maintain stable housing and employment adequate for herself and T.H., and (8) demonstrate an ability to protect T.H. and keep him safe from harm. Furthermore, appellant was ordered to submit to random drug screens, as well as drug screens prior to her scheduled visitations with T.H. The goal of the case was reunification.

In its review order entered October 25, 2013, the circuit court found that appellant had complied with "some" of the court orders and the case plan, specifically noting that she had completed parenting classes, had been appropriate with T.H. during visitations, and had made "some" progress toward alleviating or mitigating the causes of T.H.'s removal from her home. The court specifically ordered appellant to undergo a psychological evaluation, have the drug and alcohol assessment as previously ordered, and obtain appropriate housing and employment. In its review order entered January 10, 2014, regarding appellant's compliance with the case plan, the court restated its findings from its October 25, 2013 review order. Furthermore, appellant was ordered "to enter inpatient treatment forthwith."

In its permanency-planning order, entered April 21, 2014, the circuit court continued the goal of reunification, stating that placement of T.H. in appellant's home shall occur within a time frame consistent with T.H.'s needs, but no later than three months from the date of the permanency-planning hearing. The circuit court found that

appellant had complied with the case plan and the court's order, [5] specifically finding that she "[had] made progress in this matter although it is late progress" and had continued to have clean drug screens.

In its July 11, 2014 review order, the circuit court changed the goal of the case from reunification to termination of appellant's parental rights and adoption of T.H. The circuit court noted that while appellant had completed residential inpatient treatment on February 24, 2014, had completed parenting classes, and had completed a psychological evaluation, appellant lived with her grandmother and father, the latter of whom was on probation for felony drug charges. Furthermore, a petition to revoke appellant's probation had been filed due to a number of her failures, including her failing two drug screens (one for THC and amphetamines and the other for amphetamines only). Due to her failed drug screens, she had been arrested at her place of employment, Burger King, on June 25, 2014, and was in possession of drug paraphernalia at that time. The circuit court noted that appellant had not been attending counseling; had not been able to produce samples for some of her drug screens—some failures which occurred during the same time she had positive drug screens with her probation officer; had missed one visit with T.H. since the last hearing; had not visited T.H. since being incarcerated; and had admitted to using methamphetamines and marijuana on June 22, 2014. Finally, the court noted that Interstate Compact on the Placement of Children (ICPC) paperwork had been completed on appellant's mother, Kelly Flowers, who lived in California with her husband and wanted custody of T.H. The circuit court found that DHS had made reasonable efforts to

---

[5] Of note, a Freedom House discharge summary showing her completion of residential inpatient treatment was admitted into evidence at the permanency-planning hearing.

 

provide family services to achieve the goal of reunification in this order and each of its prior orders.

DHS filed its petition for termination of appellant's parental rights on August 6, 2014, on grounds that:

1. A juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent;[6]

2. Subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose which demonstrate that return of the juvenile to the family home is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent placement of the juvenile in the custody of the parent; and[7]

3. The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court to have subjected any juvenile to aggravated circumstances. Aggravated circumstances means a juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification.[8]

A hearing on DHS's petition was held on October 10, 2014.

At the termination hearing, appellant admitted using drugs "shortly before giving birth" to T.H. and that she failed a drug test at T.H.'s birth for methamphetamine and marijuana. She stated that she had worked at two jobs in the six-month period between

---

[6] Ark. Code Ann. § 9–27–341(b)(3)(B)(i)(*a*) (Supp. 2013).

[7] Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)(*a*).

[8] Ark. Code Ann. § 9–27–341(b)(3)(B)(ix)(*a*).

April 2013 and October 2013, admitting that she lost her job at Burger King when she was arrested there. She admitted that she was arrested for violating her probation by failing drug screens and that she had drug paraphernalia in her possession when she was arrested—"meth pipes and stuff"—when she was arrested, which she used for methamphetamines. She stated that she had graduated from drug rehab at Freedom House, but admitted to using drugs, methamphetamines again, "about four months" after she left the program. She admitted that she did not take a couple of drug screens because she "knew [she] would fail." Accordingly, she admitted that she had "relapsed."

Appellant testified that she was in a nine-month program at a regional correctional facility and that she would be on parole for two years upon her release. She stated that she would be paroled to her grandmother's home, where her father had once lived with her, but whom she denied currently lived in the home. She took responsibility for T.H. being in foster care and stated that she understood that T.H. had been in foster care his "whole life."

Pamela Lueker, a DHS caseworker, testified that there were no trial placements with appellant because she was not "stable enough for a trial home placement." She stated that appellant visited T.H. about every week from May 2, 2013, until June 2014 when she was arrested, with the exception of ten "no shows." She testified that appellant showed up for two counseling appointments and never showed up again, noting that it was important that appellant receive counseling "to come to terms with the fact that her child was removed from her due to her actions." Lueker testified that she did not believe appellant had made substantial, measurable progress in the case; had worked diligently toward

reunification; had shown genuine sustainable investment in complying with the case; or made an effort to maintain sobriety.

Lueker testified to having difficulty getting in contact with appellant, noting that she sometimes went to appellant's home "at least" three times a week in an attempt to contact her. She also noted that when she was able to contact appellant, appellant would state on some occasions that she was unable to provide a sample due to her inability to urinate. Lueker stated that appellant asked her once to "call first" before coming to do a drug screen, to which Lueker replied she could not do due to the drug screens needing to be random.

Following Lueker's testimony, appellant moved for a directed verdict. It was denied. Flowers then testified that she wanted custody of T.H., had been contacting DHS since T.H. was taken into care to no avail until recently, and had had an ICPC home study completed on her home in California, which was still pending. Noting that the court did not have the ICPC report, the circuit court continued the matter until October 24, 2014, ordering the Arkansas ICPC Director to be present at that hearing if the circuit court had not received the ICPC report by that date.

At the time of the October 24, 2014 hearing, the ICPC had been submitted to the court. Flowers testified again at the October 24, 2014 hearing. She stated that she and her husband, whom she admitted had three felony DUIs and some other "drug related stuff" in his criminal history and whom she described as "just an alcoholic," had moved from her home when she returned to California following the July 11, 2014 hearing. She stated that they were separated, were going to stay apart, and were getting a divorce; however,

she admitted that she still loved her husband and that it was not her decision for her husband to move out. She acknowledged that her husband was not approved to be around T.H. if she were to obtain custody.[9] She admitted that both she and her husband had a past history of methamphetamine use, though she asserted that she had been clean for fourteen years. She also stated that though she had asthma, she smoked a pack of cigarettes a day, but would quit if given custody of T.H., who has breathing issues that sometimes require a breathing machine.

Marie Lawrence, Department of Children and Family Services supervisor in Yell County, testified to numerous issues with Flowers obtaining custody of T.H., including her income-to-expense ratio; that she had left appellant, as a child, with her dad who was a drug addict and never tried to get her back; and her pack-a-day smoking habit. Lawrence asserted that Flowers's home study would not have passed with her husband in the home.

Kevin Darby, a CASA volunteer, testified that appellant's drug use was a "concerning aspect" of the case for him. He stated that appellant made herself available in a "sporadic" manner. He also noted his concern that Flowers had "abandoned" appellant and her sister as children. He stated that appellant told him "she didn't want her, [sic] anything to do with her mother."

Following Darby's testimony, appellant moved to dismiss the termination proceeding arguing that DHS had not proven the facts of the petition and had not made

---

[9] At the October 10, 2014 hearing, Flowers stated that her husband moved out because he knew "the Judge would not even consider [Flowers]"–"that a home study would not be approved with his record."

reasonable efforts to provide permanency to T.H. because it had "dropped the ball" on the ICPC in this matter.[10] The motion was denied. The court then granted DHS's petition to terminate appellant's parental rights.

The circuit court entered an order terminating appellant's parental rights to T.H. on November 21, 2014, finding that DHS had proved each ground asserted in its petition, that termination of appellant's parental rights was in T.H.'s best interest, and that he was adoptable. This timely appeal followed.

In compliance with *Linker-Flores* and Rule 6-9(i), counsel ordered the entire record and found that after a conscientious review of the record, there are no issues of arguable merit for appeal. Counsel's brief adequately covered each ruling that was adverse to appellant, including the termination of her parental rights. After carefully examining the record and brief, we conclude that the appeal is wholly without merit. Accordingly, we affirm the termination of appellant's parental rights and grant counsel's motion to withdraw as counsel.

Affirmed; motion to withdraw granted.

ABRAMSON and GLOVER, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, for appellant.

No response.

---

[10] The ICPC was not ordered until July 2014 and was not completed until October 2014, though Flowers had been requesting custody of T.H. since the beginning of the case according to her testimony.