

Cite as 2016 Ark. App. 32

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–15–767

| | |
|---|---|
| NATHAN BYRD<br><div align="right">APPELLANT</div> | **Opinion Delivered** January 20, 2016 |
| | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17JV-14-144] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><div align="right">APPELLEES</div> | HONORABLE MICHAEL MEDLOCK, JUDGE |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**PHILLIP T. WHITEAKER, Judge**

The appellant, Nathan Byrd, appeals an amended order from the Crawford County Circuit Court terminating his parental rights to his two children, E.B. (d/o/b 08/12/13) and S.B. (d/o/b 12/20/11). Byrd's attorney has filed a no-merit brief and motion to withdraw pursuant to *Linker-Flores v. Arkansas Department of Human Services,* 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup. Ct. R. 6-9(i) (2015). In accordance with Rule 6-9(i)(A), the brief lists all adverse rulings at the termination hearing and discusses why the adverse rulings do not present meritorious grounds for reversal.

Pursuant to Arkansas Supreme Court Rule 6-9(i)(B)(3), our supreme court clerk's office mailed copies of counsel's brief and motion to Byrd, and Byrd has filed a pro se letter in response. We conclude that Byrd's attorney has complied with the requirements for no-merit termination cases and that an appeal would be wholly without merit. We further

conclude that Byrd's pro se letter presents no meritorious ground for reversal. Accordingly, we affirm the termination order and grant the motion to withdraw.

The facts of this case support our conclusion that an appeal would be wholly without merit. On June 6, 2014, the Crimes Against Children Division of the Arkansas State Police received a call from Summit Medical Center advising of a case of possible child abuse. The call was initiated after a physical examination of then nine-month-old E.B. revealed the infant was suffering from a skull fracture, fractures of her ankle and wrist, vaginal trauma and bleeding, and nine compression-type spine fractures. Judie Emberton,[1] the mother of E.B. and S.B., had sought medical attention for E.B. upon the child's return home from visitation with Byrd after she discovered suspicious bruising on the child at bathtime.[2] Based upon the nature and severity of the injuries inflicted upon the child and the inconsistent history of the injuries provided, the Department of Human Services (DHS) exercised a 72-hour hold on E.B., S.B., and their half-sister, M.L.[3]

Procedurally, both E.B. and S.B. were adjudicated dependent-neglected, with the court making a finding of aggravated circumstances against Byrd. This adjudication was not appealed. Subsequently, DHS filed a petition to terminate Byrd's rights. At the termination

---

[1] Emberton's parental rights are not at issue in this appeal.
[2] Byrd was subsequently charged in Oklahoma with first-degree rape and multiple counts of child abuse.
[3] M.L. was subsequently placed in the custody of her legal father, Tommy Langley, and her status is not an issue in this appeal.

SLIP OPINION

hearing, DHS presented evidence that E.B. had been physically and sexually abused based on the severity and type of injuries she had sustained. Both the family-service worker and the representative of the Cherokee Nation testified that the children were adoptable.

After the hearing, the trial court granted the petition, finding beyond a reasonable doubt that it was in the children's best interest to terminate Byrd's parental rights and based the termination on three statutory grounds: (1) that Byrd had subjected the children to aggravated circumstances and there was little likelihood that further services to him would result in successful reunification; (2) that the court had found the juvenile or a sibling dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents or step-parent or step-parents; and (3) that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent. Ark. Code Ann. §§ 9-27-341(b)(3)(B)(ix)(*a*)(*3*), (b)(3)(B)(vi)(*a*), and (b)(3)(B)(vii)(*a*). In so finding, the court noted the extreme nature of the abuse and the harm caused to the infant and that the child was in Byrd's custody at the time the injuries occurred with no reasonable explanation provided for the injuries.

In making its determination, the court mindfully considered the facts and the testimony of the qualified experts under the heightened "beyond a reasonable doubt" burden of proof, as opposed to the "clear and convincing" standard, as required by the Indian Child Welfare Act—a federal statute that governs termination of parental rights of an Indian child. The Act provides in pertinent part:

> No termination of parental rights may be ordered in such proceeding in the absence of the determination, supported by evidence beyond a reasonable doubt, including testimony by a qualified expert witness, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f).

In accordance with Ark. Sup. Ct. R. 6-9(i)(1)(A), counsel for appellant has carefully reviewed the record for all rulings by the trial court that were adverse to appellant, including objections, motions, and requests made by appellant at the final hearing. Counsel accurately concluded that there were none other than the termination order, which on these facts was supported by more than sufficient grounds and was clearly in the children's best interest.[4]

Turning now to Byrd's pro se letter, he essentially asserts that he loves his children and would like the opportunity to prove that he can parent them. He states that he was their primary caregiver because Emberton was gone for long periods of time. At best, this is an argument that there was insufficient evidence that termination was in the best interest of the

---

[4] Out of an abundance of caution, appellate counsel also addressed several non–adverse rulings: an objection asserted by counsel which was not decided adversely to his client, an objection not ruled on by the trial court, and a potential argument not properly raised below. As these issues were either not adverse or not preserved for appeal, counsel was correct that they would not constitute reversible error.



children. As stated above, there was sufficient evidence to support the trial court's determination in this regard.

Affirmed; motion to withdraw granted.

GRUBER and HOOFMAN, JJ., agree.

*Tabitha B. McNulty*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.