

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-15-665

| | |
|---|---|
| JOYCE JONES | **Opinion Delivered:** February 17, 2016 |
| APPELLANT | |
| | APPEAL FROM THE PULASKI |
| V. | COUNTY CIRCUIT COURT, |
| | EIGHTH DIVISION |
| ARKANSAS DEPARTMENT OF | [NO.60JV-14-234] |
| HUMAN SERVICES AND MINOR | |
| CHILDREN | HONORABLE WILEY A. BRANTON, |
| APPELLEES | JR., JUDGE |
| | |
| | AFFIRMED; MOTION TO |
| | WITHDRAW GRANTED |

**WAYMOND M. BROWN, Judge**

Appellant appeals from the circuit court's termination of her parental rights to J.J.1, born 11/30/2004; J.J.2, born 2/23/2006; J.J.3, born 1/11/12; and J.J.4, born 2/20/14.[1] Appellant's counsel has filed a motion to withdraw as counsel and a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*,[2] and Arkansas Supreme Court Rule 6-9(i),[3] stating that there are no meritorious grounds to support an appeal. The clerk mailed a certified copy of counsel's motion and brief to appellant, informing her of her right to file

---

[1] The rights of Jericho Rideout, Maurice Everett, and Potey Williams, putative fathers to J.J.1, J.J.2, and J.J.4, respectively, were terminated pursuant to the same order; however, none of these putative fathers has appealed the termination of his rights and none is a party to this appeal.

[2] 359 Ark. 131, 194 S.W.3d 739 (2003).

[3] (2015).

pro se points for reversal, and appellant has done so. We affirm and grant counsel's motion to withdraw.

DHS received a Garrett's Law referral on February 20, 2014, stating that J.J.4 had tested positive for PCP and cocaine at birth and that appellant had tested positive for the same. A family services worker's investigation on February 21, 2014, revealed that appellant had previously come to the hospital on February 14, 2014, and had tested positive for the same drugs as well as THC on the same date. Appellant denied using THC, but admitted using cocaine and PCP, though she averred that she never did drugs in her children's presence. A 72-hour hold was taken on all four children on February 21, 2014.[4]

DHS filed a petition for ex-parte emergency custody and dependency-neglect on February 24, 2014. The circuit court entered an ex-parte order for emergency custody on the same date. The circuit court entered an interim order on February 28, 2014, ordering appellant to submit to random drug-and-alcohol screens by hair shaft and urine; submit to a psychological evaluation; complete parenting classes; and obtain stable housing, employment and income. "No relative or fictive kin placement" was to be made without further court order and the children were to be drug screened by hair shaft and urine as well.

A probable cause order was entered on March 31, 2014. Therein, the circuit court found that probable cause existed to remove the children and continued so that it was

---

[4] The initial hold 72-hour hold expired and a second 72-hour hold was taken on the children on February 24, 2014.

necessary for the children to remain in DHS's custody. The circuit court awarded appellant supervised visitation, and DHS was ordered to develop an appropriate case plan.

In an adjudication order entered on May 13, 2014, the circuit court adjudicated the children dependent–neglected, as stipulated by the parties, finding that the children were subjected to neglect and parental unfitness. It specifically noted J.J.4's positive drug tests for PCP and cocaine at birth as well as J.J.1's and J.J.3's positive hair follicle drug tests for the same drugs, indicating that they were exposed to illegal substances while in appellant's custody. The circuit court noted that "the basis for a finding of aggravated circumstances exist[ed]," but that it was not making such a finding at that time.

The order went on to detail appellant's mental health issues, as described in her mental health assessment, including a diagnosis of major depressive disorder and personality disorder NOS; a 2003 hospitalization for depression and suicidal ideation; and incarceration in the Arkansas Department of Correction, from 2006 to 2010, for stabbing a person during an altercation.[5] It found that based on appellant's "extensive mental health and substance abuse issues, that reunification is a long shot[;]" however, the goal of the case was reunification. It found that appellant was unfit and not appropriate as a caregiver for the children at that time. In addition to previous orders, appellant was ordered to submit to a drug-and-alcohol assessment, participate in individual counseling, refrain from illegal drug use, and comply with the case plan.

---

[5] At the time this case was opened, appellant was on parole for the battery conviction she received stemming from this stabbing.

In its August 28, 2014 permanency-planning order, the circuit court found that appellant was "making an effort to comply" with the case plan and court orders, having maintained stable housing and income, attended individual counseling, taken her mental health medications, visitations that had "gone well[,]" and tested negative on all her random drug screens with the exception of a June 16, 2014 positive test for cocaine. Accordingly, the court reminded appellant that she must continuously test negative on her drug screens and demonstrate that she is a fit and appropriate parent to reunify with her children.

A second permanency-planning order was entered on February 2, 2015. Therein, the circuit court made a finding of aggravated circumstances on finding that there was little likelihood services would result in successful reunification with appellant in a time frame consistent with the children's special needs and interests. It noted that appellant had not made significant, measurable progress toward the goal of reunification and had had a "setback" with new charges—aggravated assault and being a felon in possession of a firearm—that resulted in her incarceration.[6] It stated that appellant's "current incarceration and older history make it difficult for her to reach a minimum level that is appropriate to care for the children." The new charges were a violation of her parole and resulted in her "serving three years on the new charges."[7] The order expressly stated that appellant would not get additional time because she went to prison.

---

[6] Appellant was arrested on August 14, 2014, after the July 22, 2014 permanency-planning hearing.

[7] Appellant was ordered to resume visitation with the children and DHS was ordered to resume providing services if appellant was released from prison prior to the next hearing. No services were required to be provided to appellant while she was incarcerated.

In making its aggravated circumstances finding, the circuit court cited appellant's psychological evaluation, which diagnosed her with major depressive disorder, generalized anxiety disorder, cocaine use disorder, phencyclidine use disorder, child neglect, and other specific personality disorder. It quoted the psychological evaluation which stated that appellant had a personality disorder that leads her to make the "same mistakes over and over." The circuit court then authorized a plan of adoption and termination of appellant's parental rights.

DHS filed a petition to terminate appellant's parental rights on March 9, 2015, on the grounds that (1) the children had been outside appellant's home for twelve months without the conditions that caused removal being corrected, despite a meaningful effort by DHS;[8] (2) the children had been outside appellant's home for twelve months during which time appellant had willfully failed to provide meaningful support;[9] (3) other factors arose subsequent to the filing of the original dependency-neglect petition manifesting appellant's incapacity or indifference to remedying the subsequent factors or rehabilitate the circumstances that caused the children's removal;[10] and (4) appellant had subjected the children to aggravated circumstances.[11] It further noted that appellant was currently serving

---

[8] Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Supp. 2015)

[9] Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)(*a*).

[10] Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*).

[11] Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*A*)&(*B*)(*i*).

SLIP OPINION

a 36-month sentence and argued that termination of appellant's parental rights was in the children's best interest. A hearing on appellant's petition was held on April 28, 2015.

At the hearing, pertinent information not already given above was testified to as follows. The family service worker for appellant's case testified that "adoption [was] likely in this particular case."[12]  He stated he had not received proof of completion for any classes, counseling, drug treatment, or anything else since, and while, appellant had been incarcerated. Appellant's mother had been presented as a possible alternative placement, but her financial capability, or lack thereof, and her age[13] made placement with her inappropriate, thereby making adoption the "most" appropriate goal.

During appellant's testimony, she admitted that she was incarcerated for "[trying] to run over [her] baby dad." She stated that she may be paroled on May 5, 2015, but agreed that there was no guarantee that she would be released and that she might have to serve her full 36-month sentence. She detailed the services she had participated in and completed, both before and during her current incarceration. She stated that she continued to have contact with her children by writing letters to them.

The circuit court entered its order terminating appellant's parental rights on May 28, 2015. Therein, it found that DHS had proven, by clear and convincing evidence, the ground that the children had been outside appellant's home for twelve months without the

---

[12] He noted that, with the exception of J.J.3, the children did not have any health or developmental issues that would be a barrier to adoption; however, he did not state what made J.J.3 an exception to that statement.

[13] According to appellant's testimony, her mother was born in 1944. Accordingly, she was 71 years old.

conditions that caused removal being corrected, despite a meaningful effort by DHS. In regards to this ground, the court noted appellant's mental health history of depression and anger and stated that appellant was currently incarcerated for trying to "run over" one of the children's fathers. It found that DHS had also proven the other subsequent factors ground, noting that after it made its aggravated circumstances finding, the case "actually went backwards[,]" and appellant was "in a worse position today that when the case started." Finally, it found that DHS had proven the aggravated circumstances ground based on the totality of circumstances where this was appellant's second "stint" in prison, and as such, the second major disruption for the children; that after over a year of work in the case, appellant was "not minimally fit to be an appropriate placement[;]" and that the period of at least one year out of prison that she would need to be sober, have a home, and be stable was "too long for the children to wait."[14] This timely appeal followed.

In compliance with *Linker-Flores* and Rule 6-9(i), counsel ordered the entire record and found that, after a conscientious review of the record, there are no issues of arguable merit for appeal. Counsel's brief adequately covered the sufficiency of the evidence in support of termination of appellant's parental rights, which was the only adverse ruling before the circuit court. After carefully examining the brief and appellant's pro se points, as presented to us,[15] we conclude that the appeal is wholly without merit. Accordingly, we

---

[14] The circuit court found that the twelve-months-without-meaningful-support ground did not apply to appellant.

[15] For her pro se points, appellant states her beliefs that she deserves reunification and that she has demonstrated that she is mentally and emotionally stable. She further states that she has participated and completed "things requested of [her,]" for which she provided copies of various certificates of participation and completion, and states that "[t]he individual

affirm the termination of appellant's parental rights and grant counsel's motion to withdraw as counsel.

Affirmed; motion to withdraw granted.

VAUGHT and HOOFMAN, JJ., agree.

*Dusti Standridge*, for appellant.

*Jerald A. Sharum*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.

---

[she] was in the past is no more." She asserted that today she is a "strong, clean, and dedicated mother, to the children that [she] love [sic] and adore [sic]." None of her statements constitute arguments of error. Accordingly, none of her points would support reversal of the circuit court's termination of her parental rights.