SLIP OPINION



Cite as 2016 Ark. App. 462

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–16–417

| | |
|---|---|
| MELANIE SANDERS | Opinion Delivered OCTOBER 5, 2016 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION [NO. 60JN-14-987] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE JOYCE WILLIAMS WARREN, JUDGE |
| APPELLEES | AFFIRMED; MOTION TO BE RELIEVED GRANTED |

### DAVID M. GLOVER, Judge

Melanie Sanders's parental rights to her son T.B., born November 9, 2011, were terminated by the Pulaski County Circuit Court. Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), her attorney has filed a no–merit brief asserting there are no issues that would support a meritorious appeal and a motion requesting to be relieved as counsel. The clerk of our court sent a certified packet to Sanders notifying her of her right to file pro se points, which she has done. We affirm the termination and grant counsel's motion to withdraw.

According to the affidavit attached to the petition for ex parte emergency custody, DHS was notified by a hotline call in May 2014 that pills were being sold out of the residence where Sanders and T.B. were staying. When investigated, Sanders told police she did not

"remove" any pills; Sanders would not allow police into the residence; she was "disoriented" and upset the police were there; and T.B. was outside barefoot in an area where there were broken glass and rocks. When police returned a few days later to check on Sanders, she told them she had smoked marijuana two weeks ago, she took "hydros" occasionally, and she had also taken some Adderall she had gotten from a friend. Sanders tested positive for methamphetamine and PCP. A hair-shaft drug test performed on T.B. revealed positive results for methamphetamine and THC. Based on this information, DHS took T.B. into custody in July 2014. The trial court granted DHS's petition for emergency custody in an order filed on July 14, 2014.

A probable-cause order continuing the emergency order of custody was filed on July 17, 2014. In this order, Sanders was granted supervised visitation at the DHS office (or any other placed deemed acceptable by DHS) three times per week for two hours. T.B. was adjudicated dependent-neglected in an order filed on September 10, 2014, due to neglect and parental unfitness.

A review order filed on December 18, 2014, stated Sanders needed to prove she had been drug free for a length of time and to establish an appropriate residence; visitation remained supervised. The trial court further found that while Sanders had substantially complied with the case plan and court orders by completing counseling, taking a drug-and-alcohol assessment, and taking parenting classes, and providing several negative drug screens, she still lived with a friend and not in her own home; she was unemployed; and, while she had attended some AA/NA meetings, she needed to attend meetings twice per week.

A second review order was filed on April 17, 2015. This order continued supervised visitation. The trial court found Sanders had partially complied with the case plan and court orders, noting visitation had been appropriate, Sanders was employed, she had negative drug screens, and she had made some progress toward alleviating the causes of T.B.'s removal; however, the trial court noted Sanders had not attended any AA/NA meetings because she did not believe she needed to do so.

In a permanency-planning order filed on July 8, 2015, the trial court changed the goal of the case from reunification to adoption, finding while Sanders had partially complied with the case plan, she still had no stable housing and there was a lack of participation in services, especially drug treatment. The trial court further found Sanders had made minimal progress toward alleviating the causes of T.B.'s removal. A review order filed on September 15, 2015, noted Sanders had minimal compliance with the case plan and court orders, finding she had missed five visitations; had not participated in drug treatment or provided AA/NA sign-in sheets; had tested positive for methamphetamine on one drug screen, negative on another, and had refused to provide a sample on two other occasions; had moved three times; her employment could not be verified; and had made no progress on alleviating the causes of T.B.'s removal. A fifteen-month permanency planning order, filed October 23, 2015, authorized a plan for adoption and found Sanders had minimally complied with the case plan and court orders. Specifically, the trial court found that Sanders had not attended AA/NA meetings or provided proof of such attendance; she was arrested on the day of the fifteen-month hearing for possession of a controlled substance, although she claimed the drugs did

not belong to her; she continued to associate with individuals involved with drugs; she was often fifteen to twenty minutes late to visitation; and she sometimes fell asleep during visitation and had to be awakened and reminded to interact with her son.

DHS filed a petition for termination of parental rights on November 6, 2015. In it, DHS alleged three bases for termination of Sanders's parental rights: (1) T.B. had been adjudicated dependent-neglected and had continued out of Sanders's custody for twelve months and, despite meaningful efforts to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent; (2) other factors arose subsequent to the filing of the original petition for dependency-neglect that demonstrate return of T.B. to Sanders's custody is contrary to his health, safety, or welfare and that, despite the offer of appropriate family services, Sanders manifested the incapacity or indifference to remedy the subsequent issues preventing the return of T.B. to her custody; and (3) Sanders had subjected T.B. to aggravated circumstances. Ark. Code Ann. § 9-27-341(a)(3)(B)(i)(a), (vii)(a), & (ix)(a)(3)(A) (Repl. 2015). In an order filed on February 19, 2016, the trial court found it was in T.B.'s best interest to terminate Sanders's parental rights on all three bases pleaded by DHS in its termination petition. Sanders filed a timely appeal.

*Sufficiency of the Evidence*

We review termination-of-parental-rights cases de novo. *Spangler v. Arkansas Dep't of Human Servs.*, 2012 Ark. App. 404. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Watson v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 28. DHS must prove by clear and convincing evidence—that degree of proof that

will produce in the finder of fact a firm conviction as to the allegation sought to be established—that it is in the children's best interest to terminate parental rights, as well as the existence of at least one statutory ground for termination. *Spangler*, *supra*. In determining the best interest of the juveniles, a trial court must take into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Myers v. Arkansas Dep't of Human Servs.*, 2011 Ark. 182, 380 S.W.3d 906. Potential harm must be viewed in a forward-looking manner and in broad terms. *Dowdy v. Arkansas Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. The trial court is not required to find that actual harm would result or to identify a potential harm. *Lee v. Arkansas Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). When the burden of proof is clear and convincing evidence, the inquiry on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Watson*, *supra*. However, we give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

At the termination hearing, Danyetta Pride, the adoption specialist assigned to the case, testified that T.B. was young with no major behavioral issues, making adoption likely. Pride

testified that there were 359 families available for adoption of a child with T.B.'s age, race, and characteristics. Rachel Nichols, the family-service worker assigned to the case, explained the reason T.B. had been taken into DHS custody was because Sanders tested positive for methamphetamine and PCP, and T.B.'s hair tested positive for methamphetamine and THC. Nichols testified that Sanders had completed a drug-and-alcohol assessment with Little Rock Outreach that recommended outpatient therapy, but when that facility could no longer be used as a provider, DHS referred her to Recovery Centers of Arkansas; Sanders was required to complete another drug-and-alcohol assessment, but she failed to show for two appointments. Sanders went to the third assessment but did not complete it because she did not take the drug screen. Because the assessment was not completed, no recommendation could be made, and Sanders could not enter the drug-treatment program. Nichols testified that Sanders denied having a substance-abuse problem; however, Sanders tested positive for methamphetamine in October 2015. Nichols also explained Sanders had her (Nichols) type a letter in April 2015 that Sanders signed stating that Sanders did not want substance-abuse treatment because she did not feel she needed it. Although Sanders had at least seven addresses during the case, Nichols had been able to verify that Sanders had stable housing since December 1, 2015, but had not yet seen the residence. However, Nichols had been unable to verify Sanders's current employment and noted Sanders had several jobs during the pendency of the case.

Sanders testified she had lived at her current address since December 1, 2015. She admitted she had been arrested in October 2015 for possession of marijuana, but she claimed

it was in a friend's purse she was carrying, and she did not know it was there. Sanders also admitted she did not have a valid driver's license but she still drove. Sanders continued to assert she did not need drug treatment because she did not think she had a drug problem; however, at the termination hearing, she testified that she did not know the extent of her addiction because she could not get an assessment performed, although she was willing to participate in the assessment. Sanders admitted that she had a positive drug screen but contested it. She explained that she refused to give a sample for her first drug-and-alcohol assessment because she was uncomfortable with two women being in the bathroom with her while giving the sample; when they would not leave and, according to Sanders, began "hollering" at her, she "lost her temper" and "hollered back." Sanders testified she had attended some AA/NA meetings and had a paper showing that she had been to numerous meetings, but Nichols would not accept it because the handwriting did not "look real."

According to Pride's testimony, T.B. was adoptable. With regard to the bases for termination, only one basis is required. Under the twelve-month, failure-to-remedy ground, the reason T.B. had been taken from Sanders's custody was because both she and T.B. had tested positive for illegal drugs. Drugs have been a pervasive issue throughout the pendency of this case. Although T.B. was removed due to positive drug tests and Sanders had a positive drug test during the case, she has steadfastly refused to participate in all drug treatment DHS has attempted to arrange, even going so far as to have her caseworker draft a letter for her to sign stating that she did not want any drug treatment because she did not think she needed it. Furthermore, Sanders was arrested during the case for possession of marijuana. Clearly, the

issue that caused removal—drugs—has not been remedied. This drug issue also creates potential harm for T.B. if he was to be returned to Sanders—if Sanders refuses to work on her drug issues, they will never be resolved. The termination was not clearly erroneous.

*Other Adverse Rulings*

Other than the sufficiency of the evidence, there was only one ruling during the termination hearing adverse to Sanders. During redirect examination of Rachel Nichols, Sanders's counsel objected to DHS's questions about Sanders's October 2015 drug screen as being outside the scope of cross-examination; the trial court overruled the objection. Counsel for DHS explained that it was attempting to not have to recall the witness in the interest of judicial economy, and the trial court allowed the questions. Rule 611(a)(1) of the Arkansas Rules of Evidence gives a trial court control over the "mode and order of interrogating witnesses and presenting evidence" in order to make it effective for ascertaining the truth and to avoid needless consumption of time. The trial court's evidentiary ruling in this matter provides no basis for reversal.

*Pro Se Points*

In her pro se points, Sanders asserts that DHS lied about the facts of her case, was unprofessional in its handling of her case, would not return phone calls, supervised her visits, and always cut her visits short. She claims T.B. was abused while in DHS custody, and she claims she is a good mother.

In addition to these arguments not being raised below, Sanders's challenges are to the credibility of the evidence presented to the trial court. For example, all of the orders in the

case ordered Sanders's visitation to be supervised; furthermore, the trial court noted that Sanders was habitually late for visitation and had to be awakened during visitation, issues that might explain why Sanders believed her visits were being "cut short." This court does not determine credibility; the trial court, as the finder of fact, was responsible for these determinations. There is evidence in the record to support the trial court's termination of Sanders's parental rights, and that decision was not clearly erroneous.

After carefully examining the record and the briefs presented to us, we hold counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and conclude that the appeal is wholly without merit. Accordingly, the order terminating Sanders's parental rights is affirmed, and counsel's motion to withdraw is granted.

Affirmed; motion to be relieved granted.

GLADWIN, C.J., and VIRDEN, J., agree.

*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellant.

*Andrew Firth*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.